54 P.3d 415

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Scott OUGHTERSON, Defendant– Appellee.**

No. 23075.

Supreme Court of Hawai'i.

Sept. 16, 2002.

**246**

Loren J. Thomas, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellant State of Hawai'i.

Linda C.R. Jameson, Deputy Public Defender, on the briefs, for the defendant-appellee Scott Oughterson.

MOON, C.J., LEVINSON, and NAKAYAMA, JJ.

Opinion of the Court by LEVINSON, J.

The plaintiff-appellant State of Hawai'i (the prosecution) appeals from an order of the first circuit court granting the defendant-appellee Scott Oughterson's motion for reconsideration of the circuit court's order denying his motion to dismiss count 1 of the complaint against him,[1] in which Oughterson was charged with committing the offense of promoting a dangerous drug in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1243 (1993).[2] On appeal, the prosecution contends that the circuit court, Honorable John C. Bryant, Jr. presiding, abused its discretion in granting Oughterson's motion for reconsideration because, in "reconsidering" the pretrial ruling of the circuit court, the Honorable Michael A. Town presiding, that, pursuant to HRS § 702–236 (1993),[3] Oughterson's conduct did not amount to a *de minimis* infraction of HRS § 712–1243, Judge Bryant "overruled another court's ruling of equal and concurrent jurisdiction without cogent reasons." Alternatively, the prosecution contends that Judge Bryant clearly erred with regard to his second, fourth, fifth, and sixth findings of fact (FOFs) and that, consequently, his second, third, fourth, and fifth conclusions of law (COLs) are wrong.[4] Because the evidence and authority that Judge Town had considered in denying Oughterson's pretrial motion to dismiss on *de minimis* grounds was not augmented in any material respect by the evidence adduced at Oughterson's trial or by legal precedents published during the intervening period of time, we agree with the prosecution that Judge Bryant abused his discretion in overruling Judge Town's order simply because he disagreed with it. Accordingly, we need not and do not reach the prosecution's remaining points of error and remand this matter to the circuit court for further proceedings.

## I. BACKGROUND

By complaint, the prosecution charged Oughterson with committing the offenses of

---

1. The Honorable Michael A. Town presided over Oughterson's pretrial motion to dismiss; the Honorable John C. Bryant, Jr. presided over Oughterson's trial and his motion for reconsideration of Judge Town's order denying Oughterson's motion to dismiss.

2. HRS § 712–1243 provides in relevant part that "[a] person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount." HRS § 712–1240 (1993) defines "dangerous drugs" as "any substance . . . specified as a 'Schedule I substance' or a 'Schedule II substance' by [HRS ch.] 329 [ (1993 & Supp. 2000).]" Cocaine, the controlled substance at issue in the present matter, is a "Schedule II substance." *See* HRS § 329–16(b)(4) (1993).

3. HRS § 702–236 provides in relevant part:

 (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

 . . . .

 (b) [d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction[.]

4. We quote Judge Bryant's written findings of fact and conclusions of law *infra* in note 14.

promoting a dangerous drug in the third degree (count 1), in violation of HRS § 712–1243, *see supra* note 2, and unlawful use of drug paraphernalia (count 2), in violation of HRS § 329–43.5(a) (1993).[5] On August 19, 1999, Oughterson filed a pretrial motion to dismiss count 1 "because [his] alleged infraction is a *deminimis* [sic] offense pursuant to [HRS § ] 702–236." In the memorandum in support of his motion, Oughterson noted that the amount of cocaine residue recovered from a glass pipe that he allegedly possessed was "0.012 grams" and citing, *inter alia*, *State v. Vance*, 61 Haw. 291, 602 P.2d 933 (1979), posited that "the amount of cocaine he allegedly possessed was "insufficient to use personally or to sell." Oughterson argued:

> According to Emeritus Professor of Pharmacology, George W. Read, Ph.D., the minimal amount of methamphetamine necessary for a physiological / psycho-neuro response is 0.030 [grams]. That amount is 0.018 [grams] more than alleged to be possessed by [ ] Oughterson in this case. No other facts attendant to the instant case indicate that [Oughterson] either intended to use or sell the dangerous drug that is attributed to him[.]

In its memorandum in opposition, the prosecution contended that HRS § 702–236 "[did] not apply in this case," insofar as HRS § 712–1243 proscribed the possession of a dangerous drug "in any amount." Alternatively, the prosecution argued that, in light of "all of the facts in this case," Oughterson's conduct did, in fact, "actually cause or threaten to cause the harm or evil sought to be prevented under [HRS § ] 712–1243[.]"

Judge Town presided over a pretrial hearing conducted in connection with Oughterson's motion. At the hearing,[6] the defense acknowledged that it bore the burden of proof, entered several stipulations into the record, and adduced the testimony of George W. Read, Ph.D, whom the court accepted as an expert in the field of pharmacology. The parties stipulated that the glass pipe that Oughterson allegedly possessed "was found to contain an aggregate substance weighing .012 grams[,] which tested positive for the presence of cocaine." The parties also stipulated several exhibits into evidence, including the lab reports regarding testing of the residue, as well as various police reports. In addition, Judge Town took judicial notice of the Honorable Dexter D. Del Resario's findings of fact, conclusions of law, and order granting a similar motion to dismiss in *State v. Viernes*, another case that was pending on appeal in this court at the time.[7]

Dr. Read opined in relevant part that thirty milligrams of cocaine was the minimal amount that could produce a "euphoric effect" in a "naive user," or, in other words, that could produce a "rush." Dr. Read testified that he did not believe that the twelve milligrams of residue that Oughterson allegedly possessed was either "saleable" or "usable as a [central nervous system] stimulant or euphoric effect stimulant." Dr. Read based his opinions on the research of others that he had reviewed, as well as his own "street verification." However, Dr. Read acknowledged that he had never conducted any studies or research into the quantity of cocaine necessary to trigger a "physiological response" and had never personally observed anyone illicitly using cocaine. Moreover, Dr. Read conceded that, even though he believed that twelve milligrams of cocaine residue could not produce a euphoric effect, it could, nonetheless, be "introduced" into the human body and could produce an elevated heart

---

**5.** HRS § 329–43.5(a) provides in relevant part that "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to ... inhale ... a controlled substance[.]"

**6.** The hearing was continued several times. It appears that, at the hearing, Judge Town not only considered Oughterson's motion, but also a similar motion brought by Deputy Public Defender Barry Porter on behalf of another client, Roderick Macon, who had allegedly possessed 0.005 grams of a substance that tested positive for the presence of cocaine. For purposes of the consolidated hearing, Deputy Public Defender Alexandra Scanlan entered special appearances for Debra Loy, Oughterson's public defender. Porter, however, appears to have argued both motions and conducted the examination of witnesses.

**7.** Deputy Public Defender Barry G. Porter argued the *Viernes* motion in front of Judge Del Resario; as noted *supra* in note 6, Porter was the principal public defender arguing Oughterson's motion in the present matter as well.

rate. Finally, Dr. Read conceded that he had "no idea" whether twelve milligrams of cocaine would have had an effect on Oughterson, acknowledging that "the only way to determine what dose produces an effect on a particular person is to test that person himself," and that he had not tested Oughterson's tolerance for cocaine.

The prosecution adduced the testimony of Kevin Ho, Ph.D., whom the circuit court accepted as an expert in the field of pharmacy and pharmacology. Dr. Ho testified that, as employed in pharmacological literature, "physiological effect" is a term describing, as an objective criterion, "something we can measure, [such as] heart rate, blood pressure, [or] pupillary dilation." "Pharmacological effect," according to Dr. Ho, "is a physiological effect that can't [sic., can] be directly attributed to some pharmacological agent"; in other words, "you give the guy the drug, he does A." And, as distinguished from a physiological effect, a "euphoric effect" is a "subjective measure of a person's emotional state." The term "euphoric effect," as Dr. Ho interpreted its usage in the literature, is employed "in a qualitative [rather than a quantitative] manner."

Dr. Ho asserted that, in the studies he had reviewed, the lowest reported dosage of cocaine at which every subject had reported getting "high" was "sixteen milligrams." Another study reported that the minimum dosage necessary to induce the participants to report a euphoric effect was fifty milligrams. Nevertheless, Dr. Ho further testified (1) that a dosage of "0.0025 grams" had been reported to "elicit a change of mood," (2) that a dosage of eight milligrams, or 0.008 grams, resulted in an increased heart rate, (3) that a dosage of sixteen milligrams, or 0.016 grams, increased "the heart rate and systolic blood pressure by 4,000," (4) that a dosage of twenty milligrams, or 0.020 grams, resulted in "acute toxicity requiring medical interven-

tion," which Dr. Ho explained meant that "you end up in ER," (5) that a "topical application" of fifty milligrams, or 0.050 grams, "produce[d] analgesia[ ] sufficient to perform surgery on the nasal cavity and sinuses," and (6) that a dosage of 500 milligrams, or 0.5 grams, was "lethal" in fifty percent of the population. However, in response to the circuit court's solicitation of his opinion, based on his education, training, and experience, as to the specific effect that twelve milligrams would have upon a person, Dr. Ho replied that such a dosage "could produce anything from no effect to death" because cocaine "is one of those drugs that's really highly variable in its response" and the effect of which, among other things, varies as a function of the user's "own individual blood chemistry."

Recalled in rebuttal to Dr. Ho's testimony, Dr. Read maintained his position that a "standard male person," who was a "naive user," would require a dose of thirty milligrams of "pure" cocaine, rather than that generally available on the street, which is "cut" with a "buffer" of some sort,[8] in order to attain a "buzz." On the other hand, according to Dr. Read, a dosage of twelve milligrams would not produce such a euphoric effect. However, Dr. Read conceded that, with respect to producing a "cardiovascular" effect, "we're much more sensitive" and that a dosage of between ten and fifteen milligrams would produce "cardiovascular effects."

Recalled in surrebuttal to Dr. Read's rebuttal testimony, Dr. Ho opined that "your average Joe" who is a "naive user" and weighs "70 kilograms" "could have a physiological ... or central nervous system response" to dosages of thirty, twelve, and even five milligrams of cocaine. Dr. Ho also opined that the same dosages could produce a euphoric effect as well.

8. Both Dr. Read and Dr. Ho testified as to the other chemical agents that cocaine is commonly mixed with before being sold illicitly. In addition, and at times in response to Judge Town's questioning, both experts testified that, depending on the buffering agent used and the amount of heat applied while smoking the cocaine, the residue amount may be comprised of mostly cocaine, a mixture of cocaine and the buffering agent, or very little cocaine. Thus, the assertion of the concurring and dissenting opinion, 99 Hawaii at 261, 54 P.3d at 432, that "Judge Town ... apparently ... found that the 12 milligrams of residue was 100 percent cocaine" is disingenuous. See Judge Town's FOF No. 12, infra at note 13 ("The glass pipe was found to contain a substance weighing .012 grams which tested positive for the presence of cocaine.").

At the hearing, neither party adduced testimony regarding any of the circumstances under which Oughterson allegedly possessed the pipe containing the residue. However, the police reports received into evidence reflected that, while on patrol in the downtown area, Honolulu Police Department (HPD) Officer Clayton Saito observed Oughterson, from a distance of approximately fifteen feet, "standing hunched over in [a] recessed doorway." Oughterson's back was facing the street and, thus, Officer Saito "could not see what [he] was doing with his hands." Two minutes later, Officer Saito observed Oughterson begin to "walk out of the recessed doorway." Officer Saito, who was patrolling on a bicycle, rode past Oughterson, coming within two feet of him; as he did so, he observed that Oughterson was "loosely holding a glass pipe ... in his right hand." Officer Saito thereupon "instructed" Oughterson to place the pipe on the ground, which Oughterson did. According to Officer Saito, "[u]pon closer inspection of the glass pipe, [he] could see what appeared to be the residue of crack cocaine inside the glass pipe." Consequently, Officer Saito arrested Oughterson. Officer Tara Amuimuia, who arrived on the scene to assist Officer Saito, recovered the pipe from where Oughterson had set it down in the recessed doorway. Officer Amuimuia's follow-up report did not note whether the pipe was "warm" at the time she picked it up.[9]

The defense argued that Oughterson's possession of twelve milligrams of a substance that had tested positive for the presence of cocaine could neither cause nor threaten to cause the harm or evil that HRS § 712–1243 sought to prevent. Oughterson urged Judge Town to find Dr. Read's testimony credible and, thus, to find that the twelve milligrams of residue was not useable or saleable as an "illicit drug[ ] in what we would term for street use." While conceding that the *de minimis* statute presumed, as was the case here, that "there was some harm done" and

that "there was a technical violation [of HRS § 712–1243] here," Oughterson contended that his infraction of HRS § 712–1243 was "too trivial to warrant the condemnation of conviction."

The prosecution, by contrast, argued that a ruling that possession of twelve milligrams of a substance containing cocaine constituted a *de minimis* infraction would import a "usable quantity standard" into HRS § 712–1243. The prosecution additionally contended that Oughterson had not carried his burden of proving that his conduct constituted a *de minimis* infraction because, among other things, Dr. Read was not a credible witness and Oughterson had adduced no evidence that the twelve milligrams of residue was "microscopic."

Aware that *Viernes* was pending in this court, Judge Town ordered the parties to provide him with copies of the appellate briefs in that case, as well as supplementary memoranda of law setting forth the manner in which, if at all, courts in other jurisdictions had construed *de minimis* statutes in relation to statutes proscribing the possession of "any amount" of a controlled substance. Both parties complied with Judge Town's request, and, on November 1, 1999, Judge Town orally ruled that Oughterson's violation of HRS § 712–1243 was not *de minimis*.

On November 9, 1999, we published *State v. Viernes*, 92 Hawai'i 130, 988 P.2d 195 (1999). Subsequently, on November 23, 1999, Oughterson's jury trial commenced in the circuit court, the Honorable John C. Bryant presiding.

On November 23, 1999, before a jury was empaneled, Oughterson orally moved Judge Bryant to "reopen the issue of *de minimis* and [his] motion for reconsideration [of Judge Town's oral ruling denying his motion to dismiss on *de minimis* grounds,] which [he had] presented [to the first circuit court clerk] for filing" on November 22, 1999.[10]

---

**9.** The transcripts of the proceedings over which Judge Town presided reflect that he was concerned about the implications of whether the pipe was warm, which would provide a basis reasonably to infer that its possessor had recently used it to inhale the controlled substance contained in the residue. In essence, Judge Town

believed that such a fact was "important" because "[w]e don't want to encourage people to run out and smoke it all up[.]"

**10.** Although Oughterson's motion for reconsideration of Judge Town's oral ruling bears a handwritten date of November 22, 1999, which

Defense counsel informed Judge Bryant that Oughterson's motion for reconsideration was "basically based upon the decision in *State* [*v.*] *Viernes*[.]" Defense counsel asserted that Judge Town "didn't have the benefit of [*Viernes*] when he made his decision in this case" and, thus, urged that "he should have the opportunity to reconsider" his ruling, which, according to defense counsel, he had "indicated [a] willingness to [do]." Defense counsel, accordingly, requested that Judge Bryant "either send the motion back to Judge Town for reconsideration, continuing the trial, or take the matter under advisement [himself] and make a determination as to the facts of this case with *Viernes*" in mind.[11] The prosecution noted its "record objection" to a continuance of the trial and, "as for reconsideration," asserted that "Judge Town looked at all the issues," "heard experts from both" parties, and "made a decision that this quantity, given all the factors, various factors in this case, was not *de minimis*." Judge Bryant denied Oughterson's request for a continuance and ruled that "[t]he motion for reconsideration is not timely," but, nevertheless, "reserve[d his] right as the trial judge to make a determination after [the] close of [the] evidence whether this alleged amount of cocaine is in fact *de minimis*."

At trial, the prosecution's case-in-chief principally consisted of the testimony of a criminalist and Officers Saito and Amuimuia; the prosecution also adduced testimony from several other witnesses who established the chain of custody with regard to the pipe and the cocaine residue inside it. The criminalist testified that she had determined that the aggregate weight of the residue substance was twelve milligrams and that the substance "contained cocaine." She acknowledged that she could not, however, determine the "puri-

ty" of the substance, *i.e.*, how much of the substance was actually cocaine, because, to do so required a substance weighing at least fifty milligrams.

Officers Saito and Amuimuia testified regarding the circumstances of their arrest of Oughterson and the recovery of the pipe; their testimony did not materially differ from that reflected in their police reports or from the facts established during the hearing before Judge Town with regard to Oughterson's motion to dismiss. The only facts to surface that had not been adduced during the pretrial hearing were that Officer Saito had not found any matches or a lighter in Oughterson's possession and that Officer Amuimuia could not recall whether the pipe had been "warm" when she retrieved it from where Oughterson had set it down.

On November 23, 1999, at the close of the prosecution's case-in-chief, Oughterson orally moved for a judgment of acquittal, based on the prosecution's alleged failure to establish beyond a reasonable doubt, with respect to both counts 1 and 2, that he knew that the pipe contained cocaine and, with respect to count 2, that he intended to use the pipe as drug paraphernalia. Judge Bryant denied Oughterson's motion insofar as it was predicated on the foregoing reasons.

However, partially in the alternative, Oughterson "similarly . . . ask[ed]" Judge Bryant to dismiss count 1 on the ground that Oughterson's infraction of HRS § 712–1243, as established at trial, was *de minimis*. Oughterson based the latter entreaty upon "the fact that [twelve milligrams] is, as argued before, a nonusable amount but is also so small that it cannot be quantitatively tested by the State to tell this Court what amount it is." Arguing that the total-

___

appears above his counsel's signature, the first circuit court clerk did not actually file the document until 11:34 a.m. on November 23, 1999. At the time she orally urged Judge Bryant to "reopen" the issue, Oughterson's counsel had not received a filed copy from the first circuit court clerk, but "assume[d] [that] it [had been] filed as of" November 23, 1999.

**11.** Defense counsel, however, noted that there was a "problem" with Judge Bryant considering the issue anew because

I don't have expert testimony for this trial because that's all been presented to Judge Town. Otherwise, I think this Court has the right to consider the issue, even though the law of the case was [Judge Town's] ruling[,] because the new case came down immediately thereafter[;] so I would present those requests to the Court. Other than that, we're ready to go to trial, and this is not a case where expert testimony would be relevant except for the issue of *de minimis*.

ity of the circumstances surrounding Oughterson's possession—*i.e.*, the prosecution's inability to establish that the pipe was warm or that Oughterson had furtively attempted to hide it, as well as its failure to establish where or from whom he had obtained the pipe—Oughterson urged that the prosecution had not "given us any facts within which this Court can say that, in this case, [twelve milligrams of cocaine residue] was usable, saleable or would have a narcotic effect or was intended for that purpose[.]" In response, the prosecution argued the *de minimis* issue on the merits, reiterating its position that twelve milligrams was a "substantial amount"; the prosecution did not, however, remind Judge Bryant that Judge Town had already denied Oughterson's pretrial motion to dismiss on *de minimis* grounds. Judge Bryant "reserve[d] the *de minimis* issue until" the following "morning" so that he could "take another look at *Viernes* [.]"

On the morning of November 24, 1999, defense counsel brought to Judge Bryant's attention the fact that she had filed a written motion for reconsideration, which Judge Town was scheduled to hear on December 13, 1999. Judge Bryant remarked that he "was aware of that," but nonetheless sought clarification from the parties as to the amount of cocaine that was "the minimum for discernable effects." The deputy prosecuting attorney represented to Judge Bryant that, according to his recollection, the testimony adduced at the hearing conducted before Judge Town in connection with Oughterson's motion to dismiss reflected that there were "reported mood changes" with dosages of

"point 00523" and that "there's measurable changes . . . in pulse rate . . . or blood pressure" with dosages of "point 008." Judge Bryant then orally granted Oughterson's motion for reconsideration of Judge Town's order, remarking, in relevant part, as follows:

> The Court finds that it is the burden of the State of Hawai'i, not the defendant, once the issue has been properly raised, as it has been here, to show that the point 12 grams [sic., twelve milligrams] of residue would produce a discernable effect on the human body. The Court finds that the State has not done that. This Court realizes that Judge Town on November 1, 1999 issued a decision as to the *de minimis* issue and normally that would be the rule of the case or the law of the case. However, . . . in the interim, the Supreme Court's decision in *State v. Viernes* was issued. This Court then feels it is appropriate to consider anew the *de minimis* issue.

In accord with his oral ruling, Judge Bryant directed defense counsel to prepare written findings of fact, conclusions of law, and an order granting Oughterson's motion for reconsideration. Trial then resumed with regard to count 2, the drug paraphernalia charge, of which the jury eventually acquitted Oughterson.[12]

Judge Town did not file his written findings of fact and conclusions of law and formally enter his order denying Oughterson's motion to dismiss count 1 on *de minimis* grounds until November 29, 1999. In his written order, Judge Town cited to *Viernes*, but, nevertheless, concluded that "[t]he amount of cocaine that [Oughterson] possessed . . . was a substantial amount." [13]

12. Oughterson's case-in-chief consisted solely of his own testimony. In essence, Oughterson testified that he had found the pipe in the doorway, had no intention of using it, and, in fact, had picked it up in order to turn it over to Officer Saito, whom he had seen approaching him before he had picked up the pipe.

13. In full, Judge Town's findings of fact and conclusions of law were as follows:

1. On July 3, 1999, Honolulu Police Officer Clayton Saito (hereinafter Officer Saito) [w]as assigned to the District 1 Bicycle Detail.

2. At approximately 17:08 hours, Officer Saito was riding his police bicycle in full uniform in the kokohead direction on North Pauahi Street.

3. From approximately fifteen (15) feet away, Officer Saito observed Defendant standing hunched over in the recessed doorway to the ewa side of 152 North Pauahi Street.

4. Defendant was faced in the mauka direction with his back facing North Pauahi Street.

5. Based on Officer Saito's familiarity with the area, and knowledge that the doorway was commonly used for illicit drug use, he rode past Defendant.

6. Officer Saito observed Defendant from a distance of approximately two (2) feet; loosely

On December 10, 1999, Judge Bryant filed his written findings of fact and conclusions of law and entered his order granting Oughterson's motion for reconsideration of Judge Town's ruling denying Oughterson's motion to dismiss count 1. Judge Bryant's written

order did not deviate from his oral ruling and reflects that the apparent basis upon which he granted reconsideration was the publication of *Viernes* and his disagreement with Judge Town regarding the application of that decision.[14]

> holding a glass pipe, commonly used to smoke crack cocaine, in his right hand.
>
> 7. Officer Saito instructed Defendant to place the pipe on the ground, and he complied.
>
> 8. Upon closer inspection, Officer Saito observed the glass pipe, three (3) to four (4) inches in length with a piece of brillo in one end, and what appeared to be crack cocaine residue within it.
>
> 9. Defendant was placed under arrest for Promoting a Dangerous Drug in the Third Degree and Unlawful Use of Drug Paraphernalia at 17:10 hours.
>
> 10. Officer Tara Amuimuia recovered the glass pipe from the ground and submitted [it] into evidence.
>
> 11. Honolulu Police Department Chemist Shirely Brown examined the evidence and analyzed the substance from the glass pipe.
>
> 12. The glass pipe was found to contain a substance weighing .012 grams which tested positive for the presence of cocaine.
>
> 13. Under Section 712–1243 of the *Hawai'i Revised Statutes,* a person commits the offense of Promoting a Dangerous Drug in the Third Degree if the person knowingly possesses any dangerous drug in any amount.
>
> 14. Cocaine is a dangerous drug listed in Schedule II of the drug schedules of the Uniform Controlled Substances Act. Section 329–16(b)(4), *H.R.S.,* and Section 712–1240, *H.R.S.*
>
> 15. Under Section 702–236(1)(b) of the *Hawai'i Revised Statutes,* the Court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction.
>
> 16. All of the relevant facts bearing upon defendant's conduct and the nature of the attendant circumstances regarding commission of the offense should be considered by the Court in deciding a De Minimis issue. *State v. Park,* 55 Haw. 610, 525 P.2d 586 (1974).
>
> 17. The Court in *State v. Viernes,* No. 22266, Slip Op. at 10 [92 Hawai'i 130, 135, 988 P.2d 195, 200] (Haw. Nov. 9, 1999) stated that "conduct may be so harmless that, although it technically violates *H.R.S.* section 712–1243, it is nonetheless *de minimis* pursuant to *H.R.S.* section 702–236."
>
> 18. The amount of cocaine that Defendant possessed, 12 milligrams, was a substantial amount.

14. In full, Judge Bryant's written findings of fact were as follows:

> 1. The Defendant was arrested and charged with Promoting A Dangerous Drug in the Third Degree and Unlawful Use of Paraphernalia on July 3, 1999 on N. Pauahi St., based upon a[ ] police officer seeing a cocaine pipe with residue in Defendant's hand.
>
> 2. There was no evidence that Defendant or anyone was smoking the pipe, putting anything into the pipe or using the pipe in any way. There was not any evidence Defendant had any other drugs or any source with which to light the pipe.
>
> 3. The amount of residue measured with in [sic] the pipe was 0.012 grams total, and the substance contained cocaine.
>
> 4. There was evidence from the HPD criminalist that the amount of substance was too minuscule to test for purity, so the amount of cocaine present in the residue could not be determined within any acceptable margin of error.
>
> 5. The Court took judicial notice of the fact that cocaine is commonly "cut" with other substances which are added thereto.
>
> 6. The Court finds that .008 is the minimum amount of cocaine for a discernable effect on the human body.

In full, Judge Bryant's written conclusions of law were as follows:

> 1. Under Hawai'i Revised Statutes § 702–236, the Court may dismiss a prosecution upon a finding that the conduct of the Defendant did not actually threaten the harm or evil sought to be prevented by the law defining the offense, or did so only to an extent too trivial to warrant the condemnation of conviction.
>
> 2. Reconsideration is sought by the publication of *State v. Viernes,* S.Ct. No. 22266 [92 Hawai'i 130, 988 P.2d 195] (Nov. 9, 1999), which further elucidated and analyzed that statute[ ] and held that where the amount of the controlled substance was so minuscule as to have no discernable effect on the human body, then possession of the drug could not lead to abuse, social harm, or property and violent crimes.
>
> 3. This Court finds that 0.012 grams of [a] substance containing an immeasurable amount of cocaine leads to a reasonable inference that the amount of cocaine in question is not [a] saleable or us[e]able amount.
>
> 4. The State has the burden of proof to show that the amount of 0.012 grams of a substance[,] containing an unknown amount of cocaine, would have a discernable effect on the human body.
>
> 5. In consideration of the evidence in the instant case, including all the other relevant

The prosecution timely appealed Judge Bryant's order, arguing that he had abused his discretion in granting Oughterson's motion for reconsideration of Judge Town's order denying Oughterson's motion to dismiss on the basis, *inter alia*, that Judge Bryant had contravened the doctrine of "law of the case" in doing so.

## II. STANDARDS OF REVIEW

### A. De Minimis Rulings

 A circuit court's ruling with regard to whether a defendant's criminal conduct constitutes a *de minimis* infraction pursuant to HRS § 702–236 is reviewed on appeal for an abuse of discretion. *See, e.g., State v. Balanza*, 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (citing *Viernes*, 92 Hawai'i at 133, 988 P.2d at 198). "A court abuses its discretion if [it] clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Id.* (citations and internal quotation signals omitted).

### B. Motion For Reconsideration

 A circuit court's ruling with regard to a party's motion for reconsideration is reviewed on appeal for an abuse of discretion. *See, e.g., Bettencourt v. Bettencourt*, 80 Hawai'i 225, 231, 909 P.2d 553, 559 (1995) (citing, *inter alia*, *Kaneohe Bay Cruises, Inc. v. Hirata*, 75 Haw. 250, 251, 861 P.2d 1, 3 (1993)).

## III. DISCUSSION

 In *Wong v. City and County of Honolulu*, 66 Haw. 389, 665 P.2d 157 (1983), this court reaffirmed and refined the position that

[a] judge should generally be hesitant to modify, vacate or overrule a prior interlocutory order of another judge who sits in the same court. Judicial restraint in this situation stems from considerations of courtesy and comity in a court with multiple judges, where each judge has equal and concurrent jurisdiction.

factors, the Court finds that the conduct in the instant case does not warrant the condemna-

The normal hesitancy that a court would have in modifying its own prior rulings is even greater when a judge is asked to vacate the order of a brother or sister judge. The general rule which requires adherence to a prior interlocutory order of another judge of the same court thus commands even greater respect than the doctrine of "law of the case[,]" which refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case, including rulings made by the judge himself [or herself.]

*Unless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion.* See Greyhound Computer Corp., Inc. v. International Business Machines Corp., 559 F.2d 488, 508 (9th Cir.1977), cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); Shreve v. Cheesman, 69 F. [785,] 791 (8th Cir. 1895); In re Airport Car Rental Antitrust Litigation, 521 F.Supp. 568, 572 (N.D.Cal.1981), aff'd, 693 F.2d 84 (9th Cir.1982).

66 Haw. at 395–96, 665 P.2d at 162–63 (some citation omitted) (underscored emphasis added) (italics in original) (reversing order granting motion for reconsideration, where court granting the motion for reconsideration of an order of another court of equal and concurrent jurisdiction appeared to disagree with the first court's usage of the word "negligence," but the two orders were substantially similar in all other respects); *see also Stender v. Vincent*, 92 Hawai'i 355, 362–63, 992 P.2d 50, 57–58 (2000) (citing *Wong* and holding that, where motions court had previously imposed sanctions and ordered that "other curative measures" could further mitigate prejudice caused by spoliation, "law of the case" doctrine did not bar the imposition of further sanctions that the trial court "might later deem appropriate" depending on "[n]ew evidence or developments [that might] arise at trial").

tion of conviction.

■ In *State v. Mabuti*, 72 Haw. 106, 807 P.2d 1264 (1991), this court applied the foregoing rule of "comity" in a criminal context. Quoting the sentence from *Wong* underscored above, we further noted in *Mabuti* that the *Wong* "comity" rule "is not an absolute rule that prevents one judge from changing an earlier ruling once the facts are more fully developed, thus making obvious the prejudice which would result from enforcing the early ruling." *Mabuti*, 72 Haw. at 114, 807 P.2d at 1269. Accordingly, the *Mabuti* decision impliedly acknowledges that a change in the factual underpinning a particular ruling may rise to the level of a "cogent reason" that would justify a court in overturning the ruling of another court of equal and concurrent jurisdiction. Accordingly, we held in *Mabuti* that a trial judge abused his discretion *in refusing* to overrule the motions judge's order denying a defendant's motion for severance where, at the time of trial, a witness had become unavailable, the witness's prior statement was admissible as to a codefendant but not as to the defendant seeking severance, and the admission of the witness's statement would be "incredibly harmful" to the defendant while exculpatory as to his codefendant. *Id.* at 115, 807 P.2d at 1269.

■ The trial in the present matter did not alter the facts material to Judge Town's order denying Oughterson's motion to dismiss count 1 as *de minimis*. Thus, the factual basis upon which Judge Town ruled was identical, in all material respects, to that upon which Judge Bryant ruled.[15] As such, unless some "cogent reason" supports Judge Bryant's order, we have no choice but to hold that he abused his discretion in overruling Judge Town's order.

Other than the fact that Judge Bryant apparently disagreed with Judge Town's view of the legal significance of the factual record, the only apparent basis in the record for Judge Bryant's action—indeed, the basis that Oughterson advanced in urging Judge Bryant to reconsider Judge Town's order—was that, at the time Judge Town orally ruled, we had not published our decision in *Viernes*. And, in fact, Judge Bryant's order granting Oughterson's motion for reconsideration expressly noted that "[r]econsideration is sought by the publication of ... *Viernes* [.]" Assuming *arguendo* that the publication of new authority is sufficient to provide a court with a "cogent reason" to overrule the decision of another court ·of equal and concurrent jurisdiction, Judge Bryant, nevertheless, abused his discretion in overruling Judge Town's order. *Viernes* did not upset settled precedent or otherwise alter the legal basis or merit of Oughterson's motion to dismiss; rather, *Viernes* merely elevated to the level of a holding what had been dictum in *Vance*. *Compare Viernes*, 92 Hawai'i at 133–35, 988 P.2d at 198–200, *with Vance*, 61 Haw. at 307–08, 602 P.2d at 944.[16] In any

---

15. The two additional facts adduced at trial that were even arguably relevant to the question whether Oughterson's drug infraction was *de minimis* were (1) that, at the time the police observed him, he did not have a means to light the pipe and (2) that the pipe was not warm. As to the former, however, nothing would have prevented Oughterson, had he not been apprehended by Officer Saito, from subsequently obtaining the means to light the pipe and thereby being in a position to cause the harm sought to be prevented by HRS § 712–1243, assuming that the residue contained a usable quantity of cocaine. As to the latter, the fact that Oughterson had not used the pipe in the recent past does not speak to whether his possession of the pipe and residue *threatened*, in the future, to cause the harm or evil sought to be prevented by HRS § 712–1243. As such, neither fact materially distinguishes the record on which Judge Town ruled from that on which Judge Bryant set aside Judge Town's ruling.

16. Seeking to minimize the precedential value of the decision, the concurring and dissenting opinion, 99 Hawai'i at 259, 54 P.3d at 430, quotes the following language from *Vance*, 61 Haw. at 307, 602 P.2d at 944: "We mention in passing ... that where a literal application of HRS § 712–1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702–236, 'De minimus [sic] infractions' may be applicable to mitigate this result." The concurring and dissenting opinion, at 259, 54 P.3d at 430, then asserts, as if the foregoing was all the *Vance* court had to say on the subject, that "[t]he *Vance* court's use of the phrase '[w]e mention in passing[ ]' ... demonstrates that that decision was not 'passed upon by the court with as great care and deliberation as if it had been necessary to decide it[.]' " (Some brackets added and some in original.) (Quoting *Robinson v. Ariyoshi*, 65 Haw. at 655, 658 P.2d at 298.) Fleshed out, however, the *Vance* analysis that the concurring and dissenting opinion attempts to denigrate was as follows:

event, the written findings of fact and conclusions of law foundational to Judge Town's order expressly cite to *Viernes* and, thus, reflect that he did, prior to entering his order formally denying Oughterson's motion to dismiss on *de minimis* grounds, in fact consider it. As such, *Viernes* did not constitute new, intervening authority in the first instance, upon which reconsideration of Judge Town's order could be predicated. Accordingly, Judge Bryant would have abused his discretion in reconsidering Judge Town's order on the foregoing basis. All that remains is Judge Bryant's disagreement with Judge Town's legal judgment, and that cannot constitute a "cogent reason" for modifying Judge Town's prior ruling.

◼ Moreover, insofar as Oughterson sought *reconsideration* of Judge Town's or-

der, we have "often stated" that "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have presented during the earlier adjudicated motion." *Sousaris v. Miller*, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000) (citations omitted). In his motion for reconsideration, however, Oughterson did not advance *any* new arguments based on *Viernes*. Rather, the arguments that Oughterson advanced before Judge Town were precisely the same as those proffered to Judge Bryant. The record clearly reflects that, insofar as the parties advanced divergent positions—and Judge Town, unlike Judge Bryant, heard the testimony of the experts and expressly questioned them—concerning whether twelve milligrams of cocaine residue could

We mention in passing ... that where a literal application of HRS § 712-1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702-236, "De minimus [sic] infractions[,]" may be applicable to mitigate this result. HRS § 702-236 provides that the court may dismiss a prosecution if, considering all the relevant circumstances, it finds that the defendant's conduct did not actually cause or threaten the harm sought to be prevented by the law or did so only to an extent too trivial to warrant the condemnation of conviction.

The evil sought to be controlled by the statutes mentioned above is the use of narcotic drugs and their sale or transfer for ultimate use. Where the amount of narcotics possessed is an amount which can be used as a narcotic, the probability of use is very high and the protection of society demands that the possession be proscribed. However, where the amount is microscopic or is infinitesimal and in fact unusable as a narcotic, the possibility of unlawful sale or use does not exist, and proscription of possession under these circumstances may be inconsistent with the rationale of the statutory scheme of narcotics control. Thus, the possession of a microscopic amount in combination with other factors indicating an inability to use or sell the narcotic, may constitute a de minimus [sic] infraction within the meaning of HRS § 702-236 and, therefore, warrant dismissal of the charge otherwise sustainable under HRS § 712-1243.

In the cases at bar, the possession of .7584 gram of white powder containing cocaine and the possession of three tablets of secobarbital by the appellants does not call into play the application of HRS § 702-236. We, therefore, affirm the convictions below.

61 Haw. at 307-08, 602 P.2d at 944. In *Viernes*, we relied upon *Vance* in the following fashion:

HRS § 702-236 provides that an offense may be *de minimis* where it "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[.]" Under certain circumstances, this may, as *Vance* suggests, trump the "any amount" requirement of HRS § 712-1243.... As *Vance* suggests, ... if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernible effect on the human body, it follows that the drug cannot lead to abuse, social harm, or property or violent crimes. Accordingly, "proscription of possession under these circumstances nay be inconsistent with the rationale of the statutory scheme of narcotics control." *Vance*, 61 Haw. at 307, 602 P.2d at 944.

In the present matter, the quantity of the drug at issue was "infinitesimal and in fact unusable as a narcotic." *See id.* ... Accordingly, the circuit court did not abuse its discretion in determining that .001 grams of methamphetamine was *de minimis* pursuant to HRS § 702-236.

It should be noted that in so holding, this court should not be seen as contradicting *Vance* and applying a "usable quantity standard" to HRS § 712-1243. As pointed out in *Vance*, the determination of the amount of a drug necessary to constitute an offense falls solely within the purview of the legislature. The present holding would merely recognize, as *Vance* suggests, that conduct may be so harmless that, although it technically violates HRS § 712-1243, it is nonetheless *de minimis* pursuant to HRS § 702-236.

*Viernes*, 92 Hawai'i at 134-35, 988 P.2d at 199-200 (brackets in original).

or could not produce a pharmacological, physiological, or euphoric effect in a human being, Judge Town impliedly rejected Oughterson's argument that twelve milligrams of cocaine residue constituted an unuseable amount in concluding, to the contrary, that it was "a substantial amount." Reviewing *Viernes* before entering his written order, Judge Town further impliedly determined that *Viernes* did not alter his conclusion that Oughterson's possession of twelve milligrams of cocaine residue did not constitute a *de minimis* infraction. Thus, inasmuch as the parties' arguments tracked the considerations at issue in *Viernes* and the record clearly reflects that Judge Town considered *Viernes* before entering his order denying Oughterson's motion to dismiss, *Viernes* could not provide Oughterson with a basis upon which to advance any "new argument" to Judge Bryant. That being so, the publication of *Viernes* did not and could not justify Judge Bryant's "reconsideration" of Judge Town's order.

Because neither the evidentiary nor legal bases of Oughterson's *de minimis* arguments had changed in the interim between Judge Town's entry of his order denying Oughterson's motion to dismiss and Judge Bryant's subsequent entry of his order granting Oughterson's motion for reconsideration of Judge Town's order, we hold that Judge Bryant lacked any cogent reason for granting Oughterson's motion for reconsideration, and, therefore, abused his discretion in doing so.

As a final matter, we are compelled to note that, in his December 10, 1999 findings of fact, conclusions of law, and order, Judge Bryant concluded that "[t]he State ha[d] the burden of proof to show that the amount of 0.012 grams of a substance containing an unknown amount of cocaine[ ] would have a discernable effect on the human body." However, insofar as the *defendant* advances a motion to dismiss on *de minimis* grounds, it is the *defendant,* and not the prosecution, who bears the burden of proof on the issue. In other words, as this court's *de minimis* cases attest, the defendant must establish that his or her conduct neither caused nor threatened to cause the harm or evil that the statute, under which he or she is charged, seeks to prevent. *See, e.g., State v. Hironaka,* 99 Hawai'i 198, 53 P.3d 806 (2002); *State v. Carmichael,* 99 Hawai'i 75, 53 P.3d 214, 219 (2002); *Balanza,* 93 Hawai'i at 283–85, 1 P.3d at 285–87 (holding that trial court did not abuse its discretion in denying defendant's motion to dismiss on *de minimis* grounds where his expert witness' testimony was inadmissible); *State v. Akina,* 73 Haw. 75, 77–80, 828 P.2d 269, 271–72 (1992) (holding that trial court abused its discretion in denying defendant's *de minimis* motion because defendant established that his conduct in connection with benevolently assisting a runaway did not alter the custodial relationship with which prosecution accused him of interfering); *State v. Park,* 55 Haw. 610, 615–18, 525 P.2d 586, 590–92 (1974) (holding that trial court abused its discretion in granting defendants' *de minimis* motion because there was no evidence showing that their conduct was "in fact an innocent, technical infraction, not actually causing or threatening any harm or evil sought to be prevented by" the statute that they were accused of violating). Moreover, as we noted on the record presented in *Viernes* (the very decision upon which Judge Bryant purportedly rested his order overruling Judge Town), in a drug possession prosecution a defendant may carry his or her burden, as we held that Viernes "uncontroverted[ly]" had succeeded in doing, by establishing, within the context of "considering all the relevant circumstances," that the quantum of the controlled substance at issue "(1) could not produce any pharmacological action or physiological effect and (2) was not saleable." *Viernes,* 92 Hawai'i at 134–35, 988 P.2d at 199–200. Accordingly, Judge Bryant wrongly concluded that the prosecution bore the burden of establishing that twelve milligrams of cocaine residue would have a discernable effect on the human body.

## IV. CONCLUSION

In light of the foregoing, we hold that Judge Bryant abused his discretion in granting Oughterson's motion for reconsideration

because he lacked any cogent reason for overruling Judge Town's order denying Oughterson's motion to dismiss; accordingly, we vacate Judge Bryant's order, filed on December 10, 1999, and remand this matter to the circuit court for further proceedings.

**Opinion of ACOBA, J., concurring in part and dissenting in part.**

I agree with the majority's statement that it is the defendant who bears the burden of persuasion on a motion to dismiss on *de minimis* grounds. *See* Majority opinion 99 Hawai'i at 256, 54 P.3d at 427. For that reason, I would vacate Judge Bryant's ruling. However, because I believe that, otherwise, Judge Bryant was correct, I would remand only for the court to apply the appropriate

burden as outlined in the majority opinion. For, in my view, there were cogent reasons for Judge Bryant to reconsider Judge Town's decision denying Defendant's motion for *de minimis* consideration.[1]

**I.**

On November 1, 1999, Judge Town orally denied Defendant's motion to dismiss based on *de minimis* grounds. On November 9, 1999, this court issued its opinion in *State v. Viernes*, 92 Hawai'i 130, 988 P.2d 195 (1999). On November 23, 1999, in the course of motions in limine, Defendant sought "to re-open the issue of *de minimis* and [the] motion for reconsideration," based upon the issuance of *Viernes*. Defendant explained that he was in the process of filing a motion for

---

1. I also agree with the decision to publish this case. I regard the majority's decision as a departure from our law with respect to dicta in prior opinions. An opinion should be published when, for example, it includes a departure from existing law or clarifies a law. *See, e.g.,* 4th Cir. R. 36(a) (stating that an opinion will be published if it "establishes, alters, modifies, clarifies, or explains a rule of law within [the Fourth] Circuit"). The need for publication of opinions to give guidance to the parties, counsel, trial courts, and the public cannot be understated.

Indicative of that need is the proposal that the Hawai'i Chapter of the American Judicature Society (AJS) submitted on June 14, 2002, in the "Report of the AJS Committee Reviewing Unpublished Opinions" (the Report) to the justices of the Hawai'i Supreme Court for our consideration. It recommends that this court adopt an amendment to the Hawai'i Rules of Appellate Procedure (HRAP) Rule 35. The Report explained that "[t]here is a problem perceived by the legal community with the continued use of summary disposition orders and, particularly, the inability to cite memorandum opinions despite the fact that these opinions appear to be of substantial length and content and often cite other case law as precedent for the conclusions." The Report at 4.

The AJS recommendation, *inter alia*, suggests an amendment to HRAP Rule 35 which would permit (1) citation to unpublished opinions as persuasive authority and (2) petitions for publication of unpublished cases. The Report at 18, 20. The recommendation would obviously affect the development of law for criminal cases. The suggested amendment adds a new subsection c and re-alphabetizes and supplements the current subsection c as follows:

(c) *Application for Publication. Any party or other interested person may apply for good cause shown to the court for publication of an unpublished opinion.*

[(c)] (*d*) Citation. A memorandum opinion or unpublished dispositional order shall not be *considered nor shall* be cited in any other action or proceeding *as controlling authority*, except when the opinion or unpublished dispositional order establishes the law of the pending case, re [sic] judicata or collateral estoppel, or in a criminal action or proceeding involving the same respondent.

*In all other situations, a memorandum opinion or unpublished dispositional order may be cited in any other action or proceeding if the opinion or order has persuasive value.* A party who cites a memorandum opinion or unpublished dispositional order shall attach a copy of the opinion or order to the document in which it is cited, as an appendix, and shall indicate any subsequent disposition of the opinion or order by the appellate courts known after diligent search. If an unpublished decision is cited at oral argument, the citing party shall provide a copy to the court and the other parties. When citing an unpublished opinion or order, a party must indicate the opinion's unpublished status.

The Report at 22 (underscoring and brackets in original). This court has yet to decide on the suggested amendment.

Justice Ramil has also proposed a rule which would require publication of a case at the request of one justice. Thus, a decision would be published when the case is decided by unanimous decision, if, "[a]fter an exchange of views," any single justice votes for publication; or for publication of opinions "with a dissent or with more than one opinion ... unless participating judges decide against publication." *Doe v. Doe*, 99 Hawai'i 1, 52 P.3d 255, 269 (2002) (Ramil, J., dissenting) (quoting Rule 36(b)(2) of the United States Court of Appeals for the First Circuit) (emphasis added).

reconsideration before Judge Town and requested that Judge Bryant "either send the motion back to Judge Town for reconsideration, continu[e] the trial, or take the matter under advisement [himself] and make a determination as to the facts of this case with respect to *Viernes*." However, Judge Bryant reserved his "right as a trial judge to make a determination after close of evidence whether th[e] alleged amount of cocaine is in fact *de minimis*," essentially combining the trial and the motion to dismiss on *de minimis* grounds.

At trial, the criminalist who testified for the prosecution, Shirley Brown, explained that the *substance* she recovered from the pipe weighed twelve milligrams, but that she could not determine what amount of that substance was cocaine. None of the witnesses testified that the pipe was warm, and the officer who apprehended Defendant conceded that he did not find matches or a lighter on Defendant, which would indicate recent use of the drug.

On November 24, 1999, defense counsel advised Judge Bryant that his motion for reconsideration before Judge Town had been officially filed and was scheduled for December 13, 1999. Judge Bryant then granted reconsideration and reversed Judge Town's decision, dismissing the matter based on *de minimis* possession.

On November 29, 1999, Judge Town entered a written order and included in his Findings of Fact No. 12, that "[t]he glass pipe was found to contain a substance weighing .012 grams which tested positive for the presence of cocaine[,]" and Finding No. 18, that "*[t]he amount of cocaine that Defendant possessed, 12 milligrams, was a substantial amount.*" (Emphasis added.) Judge Town's order was based, in part, on hearings before him held on September 9, September 15, and November 1, 1999. At the September 15 hearing, Judge Town received, by stipulation of the parties, State's Exhibit 1, which was a copy of the police report issued for the instant case. Included in the police report was criminalist Brown's "CRIME LAB ANALYSIS REPORT" reflecting the results of her test of the pipe. Brown's report explained that she examined a "whitish to brownish

*substance* weighing 0.012 grams." (Emphasis added; emphasis omitted.) She stated that, "[u]pon examination and analysis, the . . . substance . . . was found to contain cocaine." (Emphasis omitted.)

At the September 15 hearing, the prosecution's expert witness, Dr. Kevin M.S. Ho, testified to the effect dosages of *pure* cocaine have on individuals, although he conceded that rock cocaine can be sold in an impure form. Immediately after Dr. Ho clarified that his dosage estimations referred to pure cocaine, Judge Town asked Dr. Ho, "What effect, if any, in your mind would .012 grams have on someone?" Dr. Ho explained that such an amount "[c]ould produce anything from no effect to death. Cocaine's one of those drugs that's really highly variable in its response."

On December 10, 1999, Judge Bryant entered his written order. Among his findings, Judge Bryant stated in Finding No. 3, "*that 0.012 grams of substance containing an immeasurable amount of cocaine leads to a reasonable inference that the amount of cocaine in question is not [a] saleable or usable amount.*" (Emphasis added.) Judge Bryant's Finding No. 3 is reflective of the testimony he received, *i.e.*, that the .012 grams of a *substance* recovered from the pipe contained cocaine in an *unknown* amount. Judge Bryant dismissed the matter before Judge Town entered his written order.

## II.

A trial judge may overturn the decision of his or her colleague if there are cogent reasons for doing so. *See Stender v. Vincent*, 92 Hawai'i 355, 362, 992 P.2d 50, 57 (2000) (" '[U]nless cogent reasons support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion.' " (Quoting *Wong v. City and County of Honolulu*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983).)). In the instant case, Judge Bryant had two cogent reasons for overturning Judge Town's ruling.

## III.

First, the issuance of *Viernes* mandated an examination of Judge Town's ruling. The

majority contends that *"Viernes* did not upset settled precedent ...; ... *Viernes* merely elevated to the level of a holding what had been *dictum* in [*State v.] Vance* [, 61 Haw. 291, 602 P.2d 933 (1979) ]." Majority opinion 99 Hawai'i at 254, 54 P.3d at 425 (emphasis added.) *Vance* reflects that there was no "settled precedent" on the subject of *de minimis* drug infractions. There, this court stated, *"We mention in passing,* however, that where a literal application of HRS § 712–1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702–236, 'De minimis infractions' *may* be applicable to mitigate this result." *Id.* at 307, 602 P.2d at 944 (emphases added.)

As a general principle, dicta does not always constitute "settled precedent," and did not in *Vance.* In *Robinson v. Ariyoshi,* 65 Haw. 641, 658 P.2d 287 (1982), this court overruled *In re Sherretz,* 39 Haw. 431 (1952), which, according to *Robinson,* had "noted that an inferior tribunal might not be bound under the doctrine of stare decisis if the pronouncement of a superior court is actually dictum." *Robinson,* 65 Haw. at 654, 658 P.2d at 298 (footnote omitted) (citing *Sherretz,* 39 Haw. at 437). Questioning the wisdom of such a rule "that accords a statement of a superior court no precedential weight merely because the statement was not necessary to the actual adjudication of the controversy[,]" *id.,* this court indicated that such statements may be the product of greater consideration and deliberation than " 'an actual decision rendered upon little argument and consideration[,]' " *id.* (quoting *Nobrega v. Nobrega,* 14 Haw. 152, 154 (1902)), and, thus, should be given greater weight. In that regard, *Robinson* decided that

> a more constructive approach would be to consider a statement of a superior court binding on inferior tribunals, even though technically dictum, *where it "was passed upon by the court with as great care and deliberation as if it had been necessary to decide it, was closely connected with the question upon which the case was decided, and the opinion was expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended."*

*Id.* at 655, 658 P.2d at 298 (quoting *Nobrega,* 14 Haw. at 155). The language relied upon by the majority to conclude that *Vance* was binding dicta in fact reflects the opposite. The *Vance* court's use of the phrase "[w]e mention in passing," 61 Haw. at 307, 602 P.2d at 944, demonstrates that that decision was not "passed upon by the court with as great care and deliberation as if it had been necessary to decide it," *Robinson,* 65 Haw. at 655, 658 P.2d at 298 (internal quotation marks and citation omitted). Moreover, the *de minimis* discussion in *Vance* was not "expressed with a view to settling a question that would in all probability have to be decided before the litigation was ended." *Robinson,* 65 Haw. at 655, 658 P.2d at 296 (quoting *Nobrega,* 14 Haw. at 155). Hence, *Viernes* clarified an unsettled area of the law, warranting Judge Bryant's review of Judge Town's oral decision, which was rendered before *Viernes* was issued.

The majority states that this opinion "attempts to denigrate" the *Vance* analysis regarding the *de minimis* statute. Majority opinion 99 Hawai'i at 254–255 n. 16, 54 P.3d at 425–426 n. 16. This is not so. The question is whether *Vance* established precedent of a binding nature. Taking it on its own terms, this court opined on the *de minimis* issue in "passing," and not as a matter central to its decision. By its language, *Vance suggested* that the *de minimis* statute *may* be used in cases where a trace amount of drugs is possessed. *See Vance,* 61 Haw. at 307, 602 P.2d at 944 ("[W]here a literal application of HRS § 712–1243 would compel an unduly harsh conviction for possession of a microscopic trace of a dangerous drug, HRS § 702–236, 'De minimis infractions' *may* be applicable to mitigate this result." (Emphasis added.)). The fact that the *Vance* dicta was not settled precedent or binding is illustrated further by the following passage of the *Viernes* opinion:

> HRS § 702–236 provides that an offense may be *de minimis* where it "[d]id not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense[.]" Under certain circumstances, this may, as *Vance suggests,* trump the "any amount" requirement of HRS § 712–1243.... As *Vance suggests,*

however, if the quantity of a controlled substance is so minuscule that it cannot be sold or used in such a way as to have any discernable effect on the human body, it follows that the drug cannot lead to abuse, social harm, or property and violent crimes....

....

... The present holding would merely *recognize,* as *Vance suggests,* that conduct may be so harmless that, although it technically violates HRS § 712–1243, it is nonetheless *de minimis* pursuant to HRS § 702–236.

92 Hawai'i at 134, 135, 988 P.2d at 199, 200 (emphases added). Plainly, the fact that *Viernes* "recognized" what *Vance* had only "suggest[ed]" confirms that *Vance* was not in fact binding dicta.

Further, in *Viernes,* the prosecution relied on *Vance* in arguing that " 'the direct and unambiguous language of HRS § 712–1243 prohibits [this court] from judicially amending the provision to include a usable quantity standard.' " 92 Hawai'i at 133, 988 P.2d at 198 (quoting *Vance,* 61 Haw. at 307, 602 P.2d at 944). While this court disagreed with the prosecution's stance, the prosecution's reading of *Vance* was within reason, and it was left to *Viernes* to clarify such questions.

Indeed, Judge Town himself acknowledged that the law on *de minimis* drug cases was not well-defined, but in a "gray" area. In rendering his oral ruling denying Defendant's motion to dismiss, Judge Town stated:

As to Mr. Oughterson, with all respect, I'm not comfortable granting a motion when there's 12 milligrams. There's some discussion as to how much is too little but there's a substantial amount of residue found there even assuming arguendo it was all cocaine. *There may be some difficulty.* But I'm just not comfortable in this case dismissing that one. And that's one you have to take up on appeal. *That's one of those I think that's in the gray area. And as I say, I'm learning as I go through these cases trying to craft some standards that can allow some predictability to defendants, the prosecutors and the public defenders and get some guidance to the supreme court.*

(Emphases added.) Considering the fact that the trial court judges, prior to *Viernes,* were apparently left to fashion standards themselves for the dismissal of drug cases on *de minimis* grounds, Judge Town's comments were understandable; it cannot be said that *Vance* was "settled precedent." Thus, the publication of *Viernes* provided Judge Bryant a cogent reason to reexamine Judge Town's oral decision, which had been rendered without the benefit of this court's opinion in that case. *Viernes,* in effect, established a new standard binding upon the trial courts; *Vance* did not.

## IV.

Second, in denying the motion to dismiss, I must conclude that Judge Town abused his discretion, based on the reasons he gave, because Defendant clearly qualified for application of HRS § 702–236. HRS § 702–236(1)(b) states that a prosecution may be dismissed as a *de minimis* infraction where "the defendant's conduct ... [d]id not actually cause or threaten to the harm or evil sought to be prevented by the law defining the offense[.]" The amount of .012 grams of substance recovered from the pipe was *residue,* not cocaine. As in *Viernes,* the amount of drug actually in the residue was not measurable, and, therefore, whatever amount was present was only a trace of the drug, not useable or saleable, a fact prefatory to qualification for *de minimis* treatment as set out in *Vance* and *Viernes* absent overriding surrounding circumstances.

As to relevant surrounding circumstances, first, other than Defendant's possession of the pipe for which he had been separately charged, there was no evidence that Defendant was actually *using* it at the time of his arrest. None of the prosecution witnesses who testified were able to establish that the pipe was warm to the touch when Defendant was apprehended and, in that connection, that matches or lighters were found on his person. Inasmuch as such indicia of use was absent, there is nothing to establish that Defendant had used the pipe on the present occasion. Second, there was no evidence Defendant was selling the substance.

Third, there was no evidence that Defendant, at the time, was involved in crimes to support any suspected drug habit.[2] Because there was (1) an unmeasurable trace of the drug and (2) nothing to indicate that Defendant (a) had, on the present occasion, used cocaine, and (b) had committed or was committing crimes to support his drug use, I believe Judge Bryant had cogent reasons for overturning Judge Town's decision disqualifying Defendant from *de minimis* consideration. The only basis upon which Judge Town exercised his discretion was his belief in the *amount* of drug involved, which finding cannot be sustained on the record.

Although I cannot agree with Judge Town's ultimate decision, I believe he acted conscientiously in this matter, especially in light of the unsettled nature of the law in this area. My disagreement stems primarily from the manner in which the majority has characterized his and Judge Bryant's roles and the import of their decisions in this case.

## V.

In any event, Judge Bryant's decision should not be vacated, other than with respect to the burden of persuasion, because Judge Town (1) apparently mistakenly found that the 12 milligrams of residue was 100 per cent cocaine[3] and (2) issued contradictory findings as to whether the 12 milligrams were cocaine or residue.[4] "Before a trial

court can address whether an offense constitutes a *de minimis* infraction, the court must make factual determinations regarding the circumstances of the offense; these findings of fact are reviewed under the clearly erroneous standard." *State v. Balanza,* 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (citing *Viernes,* 92 Hawai'i at 133, 988 P.2d at 198). A finding is clearly erroneous "when 'the record lacks substantial evidence to support the finding.' " *State v. Kotis,* 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999) (quoting *Alejado v. City and County of Honolulu,* 89 Hawai'i 221, 225, 971 P.2d 310, 314 (App.1998)). Substantial evidence is " 'credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.' " *Id.* (quoting *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998)). As mentioned, in his findings of fact, Judge Town found that "[t]he *amount of cocaine that Defendant possessed, 12 milligrams, was a substantial amount.*" (Emphasis added.)

Plainly, this was an erroneous finding. The criminologist's report that was before Judge Town reflected that the *residue,* and not the cocaine, weighed 12 milligrams. There was no evidence that Defendant possessed 12 milligrams of cocaine or any measurable amount, for that matter. Additionally, as stated *supra,* Judge Town, in rendering his ruling stated, "I'm not comfortable granting a motion when there's 12

2. The Commentary on HRS §§ 712–1241 to 712–1250 explains that the purpose of the drug statutes, as it pertains to dangerous drugs, is to deter use and commission of crimes related to obtaining funds to support such drug use:

> *These drugs are the most fearsome in their potential for destruction* of physical and mental well being. The drugs of this category are characterized by a high tolerance level which requires the user to use greater and greater amounts each time to achieve the same "high." More importantly, all the drugs, with the exception of cocaine to some extent, are highly addictive; that is, if use of the drug is discontinued, severe withdrawal symptoms occur which can be relieved only by more of the drug. *The combination of a high tolerance level and addictive liability creates a physical dependence in the user which may lead, and in many cases has led, the user to commit crimes to obtain money needed to buy more narcotics.*
>
> (Emphases added.)

3. The majority characterizes as "disingenuous" this opinion's assertion that Judge Town found that the 12 milligrams of cocaine was pure cocaine. Majority opinion, 99 Hawai'i at 248 n. 8, 54 P.3d at 419 n. 8. The majority then points out what I have in fact stated at least twice in my opinion—that Judge Town entered a finding that would seem contradictory to this—that is, that "[t]he glass pipe was found to contain a substance weighting .0123 grams which tested positive for the presence of cocaine." Finding No. 12. *See* majority opinion at 247, 54 P.3d at 418. It is, in fact, *correct* that Judge Town found that the 12 milligrams of cocaine was pure cocaine. His finding that "[t]he amount of cocaine possessed, 12 milligrams, was a substantial amount," cannot be interpreted to mean anything else.

4. In considering the record, I must rely—as we must all—on the findings of the court as they are written.

milligrams. There's some discussion as to how much is too little but there's a substantial amount of residue found there *even assuming arguendo it was all cocaine.*" (Emphasis added.)

Such an assumption was not supported by the testimony of the prosecution's expert witness, who conceded that cocaine can be sold in an impure form. Considering his findings of fact, on which I must rely, and his comments during his oral ruling, Judge Town reached his determination, *i.e.*, exercised his discretion, based on an erroneous or contradictory understanding of the amount of cocaine Defendant possessed. Consequently his order cannot be sustained and there is no principled basis upon which the exercise of his discretion can be upheld on appeal.

### VI.

I would thus vacate Judge Bryant's ruling, but only for the purpose of remanding the matter to him to apply the appropriate burden of persuasion.

Dissenting Opinion by RAMIL, J.

For the reasons discussed in *State v. Carmichael*, 99 Hawai'i 75, 53 P.3d 214 (2002), I respectfully dissent.