STATE OF HAWAII *v.* RICHARD TOSHISHIGE YOSHINO
AND PONTIANO RAPANAL, ALSO KNOWN AS
"PONCHO", DAVID PONTIANO LIBRES AND
DAVID LIBRES RAPANAL.

No. 4604.

April 4, 1968.

Richardson, C.J., Mizuha, Marumoto, Abe, JJ.,
and Circuit Judge Doi in Place of
Levinson, J., Disqualified.

OPINION OF THE COURT BY ABE, J.

Defendants Richard Toshishige Yoshino and Pontiano Rapanal, also known under several aliases, were indicted of the crime of murder in the first degree for killing Masao Miyagawa on December 29, 1965, at the Hawaii State Prison.

A joint jury trial of both defendants began on August 15, 1966. At the trial it was brought out that prior to the killing of

Masao Miyagawa, a stabbing had occurred on the early morning hours of December 29, 1965, and an investigation was started as a suspect appeared to have been under the influence of barbiturates; that while inmates were being called for questioning as to the use of barbiturates, shots were heard in the area of the bathhouse and Miyagawa was seen running out from the bathhouse followed by inmates Yoshino, Walter Watson and Rapanal; that Miyagawa fell and Yoshino, Rapanal and Watson were seen next to the fallen body of Miyagawa; that Rapanal "shoved an implement into the body"; that both Yoshino and Watson were pointing revolvers at the fallen body; and that shortly thereafter all three left the body, then Yoshino doubled back and fired two shots into the head of Miyagawa.

It further appears that during the trial, defendant Rapanal moved for a separate trial on the ground that his theory of defense differed from the theory of defense of defendant Yoshino. It was brought to the attention of the trial court that he contemplated the defense of self defense and that he wanted certain evidence to be introduced. However, attorney for Yoshino objected to such introduction and the trial court, on the grounds stated by the attorney for Yoshino, refused to admit such evidence. The motion for a separate trial was made several times. However, the trial judge refused to grant the motion on the basis that if he should grant a motion for separate trial and order a mistrial in the face of objection on the part of attorney for Yoshino, it would mean that because of double jeopardy Yoshino would go free.

During the trial Frank Olim, a prison guard, testified that Yoshino told him "this is our beef; leave us alone." He also testified that he heard Yoshino telling Rapanal "good thing you stick with me. That is how we finish our job. I open his eye to make sure his eye was white. That is how I could tell that he was dead." These two statements were admitted into evidence over the objection of attorney for Rapanal.

The record shows that Rapanal subpoenaed three inmates of the Hawaii State Prison as witnesses. All the witnesses refused to implicate or name persons who were inmates of the Hawaii

State Prison at that time. There was no hesitation on the part of the witnesses to name former inmates who were dead. It would seem that the three witnesses refused to name inmates because of fear for their safety.

Upon the refusal of the three witnesses to name other inmates, the trial judge questioned them extensively to elicit from them the names of other inmates; and failing to get the names, the trial judge, in the presence of the jury, censured them for their refusal and also commented on their credibility as witnesses.

The jury after due deliberation returned a verdict finding both defendants Yoshino and Rapanal guilty of murder in the first degree and the trial judge entered judgment accordingly. Both defendants appealed from this judgment.

I. As to defendant Yoshino:

Yoshino alleges three errors in his specifications of error.

The first specification is that the trial judge's conduct in questioning and censuring the three witnesses called by Rapanal was prejudicial error.

The State contends that as no objection was made at the time the questions were posed or to the comments made by the trial judge, this court should not consider the issue.

The nature of appellate review is well recognized in Hawaii and it is established by statute,[1] rule[2] and decision in criminal as well as civil proceedings that issues not properly raised in the lower court and which have not been considered and passed upon by the trial judge will not be considered and passed upon for the first time on appeal. *State* v. *Cummings*, 49 Haw. 522, 423 P.2d 438 (1967); *State* v. *Shon*, 47 Haw. 158, 385 P.2d 830 (1963) ; *State* v. *Arena*, 46 Haw. 315, 379 P.2d 594 (1963) ; *State* v. *Pokini*, 45 Haw. 295, 367 P.2d 499 (1961) ; *Territory* v. *Tsutsui*, 39 Haw. 287 (1952) ; *Territory* v. *Santana*, 37 Haw. 586 (1947) ; *Territory* v. *Chong*, 36 Haw. 537 (1943) ; *Territory* v. *Gagarin*, 36 Haw. 1 (1941) .

However, this specification raises the constitutional issue of

---

[1]R.L.H. 1955, § 214-4 and R.L.H. 1955, § 212-14, as amended.

[2]H.R.Cr.P., Rule 51; Rules of the Supreme Court of Hawaii, Rule 3 (b) (3) , (4) .

due process of law. We have stated in numerous cases that where fundamental constitutional rights are involved, this court will take cognizance of the issue though it is raised in this court for the first time. H.R.Cr.P., Rule 52 (b) ; *State* v. *Cummings, supra; State* v. *Ruiz,* 49 Haw. 504, 421 P.2d 305 (1966) .

Further, under the circumstances the defense attorneys were in a predicament as they were not forewarned that the trial judge would examine the witnesses so extensively and would comment so frequently on their credibility. As stated by this court in *Territory* v. *Van Culin,* 36 Haw. 153, 158 (1942) :

> "* * * The misconduct of a court is often cumulative in nature. This is especially true of a hostile attitude disclosed by an extensive examination. The behavior here takes the form of a gradual change from the function of a judge to that of a prosecutor. It may well be that during the course of this process, the acts of misconduct may not of themselves be objectionable as to form at the various times of their occurrence, but it is only after the process of change has sufficiently developed that the shift is apparent and the matter becomes a subject of objection. It is at the point when the conduct becomes unbearable that an objection can ordinarily be interposed. Until that point is reached, counsel may assume that the learned judge may at any time desist and resume his rightful role as a judge. In the meantime, counsel should not be put in the position of being compelled to overemphasize in the minds of the jury his disadvantage by making an untimely objection and thereby possibly affront both court and jury. * * *"

It is true that the facts of this case "nowhere approach the facts of *Territory* v. *Van Culin", supra,* as contended by the State; however, it is our opinion that the examination and the censuring of the witnesses by the trial judge and his frequent adverse comments as to their credibility in the presence of the jury brings this case within the holding of *Territory* v. *Van Culin.*

As stated by the U.S. Supreme Court in *In re Murchison,* 349 U.S. 133 at 136 (1955) :

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the *probability* of unfairness. * * * [T]o perform its high function in the best way 'justice must satisfy the appearance of justice.' " (Emphasis supplied.)

We find that the conduct of the trial judge in examining and discrediting the witnesses for defendants violated the requirements of a fair and impartial trial and defendant Yoshino was denied due process of law.

The other specifications of error have been considered and we find them without merit.

Reversed and remanded for a new trial.

II. As to defendant Rapanal:

From the record, it is apparent that the trial judge considered a joint trial to be prejudicial to defendant Rapanal and he would have granted a motion for a separate trial except for his misconception that granting of a separate trial would have required him to declare a mistrial of the trial for both defendants Yoshino and Rapanal and it would have meant that defendant Yoshino could not be retried on the grounds of double jeopardy.

Under the facts of the case, as recognized by the trial judge, a joint trial was prejudicial to defendant Rapanal under the provision of H.R.Cr.P., Rule 14, and the trial judge would have continued the trial against defendant Yoshino and granted defendant Rapanal a separate trial except for his misconception of legal consequences. The failure of the trial judge to exercise this discretion was prejudicial error.

Also, on the same reason for reversing the judgment against defendant Yoshino, we find that the trial judge's conduct of the trial denied defendant Rapanal due process of law.

After careful review and consideration, we find the other specifications of error to be without merit.

Reversed and remanded for a new trial.

*Ernest Y. Yamane* (*Bicoy & Yamane* of counsel) for defendant-appellant Yoshino.

*Hyman M. Greenstein* (*James G. Jung, Jr.,* with him on the briefs, *Greenstein, Cowan & Carlsmith* of counsel) for defendant-appellant Rapanal.

*T. Irving Chang* and *John A. Radway, Jr.,* Deputy Prosecuting Attorneys, City & County of Honolulu (*John H. Peters,* Prosecuting Attorney, with them on the brief) for the State, plaintiff-appellee.