STATE OF HAWAII, Plaintiff–Appellee, v. **JOEFREY MABUTI**, Defendant–Appellant, and **ISABELO BARUT, JR., EDWIN DUREG, HENRY LAGUNERO, VICENTE ACOSTA, REYNALDO FELIPE, JOSEPH ACOBA, ENRIQUE PINTOY, SIMEON ROJAS, ALLAN SILDORA, JUNE BAYUDAN** and **ERNEST DELA RAMA, JR.**, Defendants

NO. 14274

(CR. NO. 87–1554)

and

STATE OF HAWAII, Plaintiff–Appellee, v. **VICENTE ACOSTA**, Defendant–Appellant, and **ISABELO BARUT, JR., EDWIN DUREG, HENRY LAGUNERO, JOEFREY MABUTI, REYNALDO FELIPE, JOSEPH ACOBA, ENRIQUE PINTOY, SIMEON ROJAS, ALLAN SILDORA, JUNE BAYUDAN** and **ERNEST DELA RAMA, JR.**, Defendants

NO. 14178

(CR. NO. 87–1554)

March 21, 1991

LUM, C.J., PADGETT, HAYASHI,
WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY LUM, C.J.

This court is called upon to examine the separate appeals of two co–defendants who were jointly tried; both were convicted of murder.[1] In these appeals, Appellant Joefrey Mabuti and Appellant Vicente Acosta argue that a mistrial should have been declared when potentially prejudicial, non–evidentiary matters were allegedly injected into jury deliberations. Next they argue that newly

---

[1] The appeals were argued separately, but to avoid duplication of factual statements, and for comparison of the position of the two defendants since they raise similar issues, the opinions are consolidated herein.

discovered evidence justified granting a new trial. Finally, they argue that they should have been tried separately. As we see no abuse of discretion in the rulings by the trial court as to Appellant Mabuti, we affirm his conviction. However, we hold that reversible error was committed by the trial court in denying Appellant Acosta's motions for severance. We reverse Acosta's conviction, and remand for a new trial as to Acosta only.

## I.

The incident giving rise to this appeal was the gang slaying of a teenager. The incident occurred in September 1986, late at night. It was instigated when an unknown person threw a fire bomb out of a passing vehicle, in a neighborhood where a birthday party was going on at one residence, and a baptismal party was going on at another residence. Gang members in attendance at the birthday party went cruising in trucks, looking for the person who threw the bomb.

The eventual victim, Rowen Miguel, who had been at the baptismal party, was spotted hiding by a parked vehicle. When Miguel realized that he had been spotted, he called out, "not me, not me." Despite his protestation, several persons left their trucks and beat him up with baseball bats. He died a few days later as a result of the head injuries.

Twelve persons were eventually indicted, but not until over a year after the murder. Mabuti and Acosta, severed from the other defendants, were tried together. In the joint trial, Mabuti testified that he was not involved in the beating; he claimed that he had gone to a house where he heard shots and challenged the gunman to come out — and left after smashing a car windshield at the house. Acosta testified that he tried to stop the beating because he knew the victim — but was pushed aside. Acosta also testified that he saw co–defendant Mabuti participating in the beating. Acosta's

testimony was not a surprise to Mabuti, as Acosta had been consistent in his statement of the facts from when he was initially confronted by the police. At least three witnesses claimed to have seen both Appellants as some of the last persons beating the victim. Somewhat contradictory testimony came from other witnesses who were unsure about whether Appellants participated in the beating.

Well before trial, another individual, Enrique Pintoy, confessed to his own participation in the beating, and at the same time implicated most of the other defendants. Pintoy was named in the same indictment as Mabuti and Acosta, but was not included as a co–defendant in this trial. The Pintoy confession is lengthy, having taken place over a three day period. It goes into great detail about exactly what transpired — from the injuries which the victim suffered, to exactly who Pintoy saw hitting or assisting in beating the victim. He discussed the gang involvement. Pintoy also stated that Appellant Mabuti had participated in the beating, and that the two of them had discussed the incident sometime in the next couple of days, at which time Mabuti talked about having hit the victim. Pintoy also stated that while recognizing Acosta as having been at the party, he could not say whether Acosta was at the beating. Pintoy, while incarcerated after his confession, was severely beaten, and as a result was deemed both unable to proceed and unavailable for this trial.

Acosta tried to have Pintoy's confession admitted, as a statement against interest, arguing that the relevance was that it was exculpatory as to himself. The State had no objection to its admission, but Mabuti did, since it was very damaging to his case. In an effort to allow Acosta's exculpatory evidence in, the parties tried to redact the statement of references to Mabuti. The State objected to that form, arguing that it left the impression that Mabuti was at least as innocent as Acosta claimed to be. Finally, the only elements of Pintoy's confession which the court allowed were those

specifically referring to his recognizing Acosta from the party, and his lack of knowledge as to whether Acosta was present at the beating. Not even the fact that the statement was a confession was allowed. As what was left was of little consequence, Acosta chose not to use Pintoy's statement.

The existence of this confession was, in part, the reason for several attempts by Acosta to have the trial severed. The earliest such motion, over a year prior to trial, was denied by a motions judge. Closer to trial, the trial judge said at least twice, on the record, that the case should have been severed, but felt that he was bound by the earlier ruling of the motions judge.

Late in the trial it became known that two jurors had received anonymous and suspicious phone calls. None of them were threatening, but one of the callers asked for "Napo" — coincidentally the nickname of one of the trial witnesses. Both jurors, in chambers, said that they had mentioned the calls while in jury deliberations. The judge declined to conduct individual voir dire of all jurors, but prior to reading the verdict, asked them as a group whether any jurors had heard others talk about the phone calls. There was no affirmative response. The judge then refused to declare a mistrial.

Another incident occurred shortly before the verdict was returned. This was the sudden availability of an additional eyewitness, the host at the baptismal party. He had been in prison on an unrelated occurrence since shortly after the murder. This witness was ready to testify in contradiction to another eyewitness concerning both of the co–defendants' presence at the scene. His testimony was that he had seen no vehicle parked where that eyewitness claimed to have been located during the beating. A motion for retrial based on the new evidence was denied.

## II.

Appellants first argue that their right to trial by an impartial jury was denied because the jury was tainted by anonymous

telephone calls. The argument is premised on *State v. Larue*, 68 Haw. 575, 722 P.2d 1039 (1986). In *Larue*, which involved sexual abuse of a young child, the jury foreperson, based on personal experience, discussed with the jury the ability of a young child to recall events at a young age. *Id.* at 576, 722 P.2d at 1041.

The facts are easily distinguished. Here, the closest tie to the trial evidenced by the telephone calls was the request for "Napo" in one of the calls. However, the only "Napo" was a witness, and no threats were made. In addition, the criteria set out in *Larue* is that the court must determine whether a statement was made to the jury, and then whether the trial was or was not before an impartial jury. Here, on being asked by the court whether statements were made to the jury concerning anonymous phone calls, the jurors gave *no* affirmative responses. Therefore, it is questionable whether any of the jurors, other than the two receiving the calls, were actually aware of the incidents. Based on those facts, and due to the apparently benign nature of the calls, we see no abuse of discretion in denying a motion for mistrial on this issue.

## III.

Appellants' next issue on appeal is that a new trial should have been granted based on the late development of the discovery of a previously unknown witness, whose purported testimony contested the credibility of one of the State's witnesses. Standards were set forth by this court for justifying a new trial for newly discovered evidence in *State v. McNulty*, 60 Haw. 259, 588 P.2d 438 (1978), *cert. denied*, 441 U.S. 961, 99 S. Ct. 2406, 60 L. Ed. 2d 1066 (1979).

A motion for new trial based on newly discovered evidence will only be granted if (1) the evidence has been discovered after trial; (2) such evidence could not have been discovered before or at trial through the exercise of

> due diligence; (3) the evidence is material to the issues and not cumulative or offered solely for purposes of impeachment; and (4) the evidence is of such a nature as would probably change the result of a later trial.

*Id.* at 259, 588 P.2d at 440. Based on the offer of proof as to this new witness' testimony, the first and second *McNulty* factors appear to be satisfied. The third factor, as to whether the testimony is merely cumulative or for impeachment is clearly not satisfied based on the offer of proof. Finally, as to Mabuti, the evidence against him was so strong that we do not see that the new evidence would change the result of an additional trial. As to Acosta, had he been allowed all of his exculpatory evidence, *see* § VI, *infra*, there might have been a difference, but standing alone the offer of proof does not satisfy the fourth *McNulty* factor. The testimony does not implicate any person or persons, it merely discredits one witness, and bolsters another. Therefore, denial of a new trial based on the *McNulty* factors was not an abuse of discretion.

## IV.

Finally, Appellants argue that their trials should have been severed. We address Mabuti's theory at this juncture, as our treatment of Acosta's argument is included in the next two sections of this opinion. Mabuti's theory is different from co–defendant Acosta's, and so is the result of our analysis. Mabuti argues that his defense was antagonistic to that of Acosta. We have difficulty seeing this antagonism, since any combination of guilty or not guilty verdicts, as to either or both of these defendants, would have withstood any complaint of inconsistent verdicts.

Mabuti argues, however, that based on *State v. Yoshino*, 50 Haw. 287, 439 P.2d 666 (1968), to force a joint trial resulted in prejudicial and reversible error. The reliance on *Yoshino* is misplaced. In *Yoshino*, this court reversed because defendant was

denied the right to present evidence because of different theories of defense. Here, Mabuti was allowed to present all of his evidence. The person who was prejudiced was co–defendant Acosta, who was denied the right to present his own exculpatory evidence because of its potentially prejudicial effect on Mabuti. Mabuti asks us to hypothesize that Acosta's damaging statement that Mabuti was a participant in the beating might not become evidence in a new trial, by assuming that Acosta would refuse to testify against him. There is no reason to believe such a situation would occur, nor that it would make a difference in the resulting verdict. Therefore, as to Mabuti, there was no abuse of discretion in denying severance of his trial from that of co–defendant Acosta.

## V.

We begin our discussion of Acosta's severance argument with a comment on the judge's basis for denying severance of Acosta's trial from that of his co–defendant Mabuti. From the record, it is apparent that the trial judge considered a joint trial to be prejudicial to Acosta and he would have granted the severance, had he not felt compelled to follow an earlier ruling of the motions judge. It has been established, by this court, that "[u]nless *cogent reasons* support the second court's action, any modification of a prior ruling of another court of equal and concurrent jurisdiction will be deemed an abuse of discretion." *Wong v. City & County*, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (emphasis in original). In *Wong*, we reversed an order granting a motion for reconsideration, where the two orders and their results were substantially similar. *Id.* at 396, 665 P.2d at 162. We give great weight to the concept of judicial deference. However, it is not an absolute rule that prevents one judge from changing an earlier ruling once the facts are more fully developed, thus making obvious the prejudice which would result from enforcing the earlier ruling.

In this case, at the time of the original motion, it was unclear whether Pintoy would become available as a witness, or whether his confession would be admitted at trial. As the case developed, several things became clear. First, it was certain that Pintoy was unavailable. Second, Pintoy's statement was admissible as a declaration against interest. Third, the admission of that statement was incredibly harmful to Mabuti, while at the same time exculpatory as to Appellant Acosta. With those facts available at time of trial, it would not have been offensive to have the trial judge enter a ruling which he knew was appropriate. It was an abuse then for the judge not to use his discretion.

## VI.

It is clear that the Pintoy confession was not excluded because of admissibility problems. The judge apparently believed, as do we, that the Pintoy confession was admissible as a statement against interest. Hawaii Rules of Evidence 804(b)(3).

The Hawaii Rules of Penal Procedure (HRPP) provide relief from prejudicial joinder of defendants in a trial, allowing severance when justice requires. HRPP Rule 14. Such a determination is made by asking the question whether a defendant was denied his right to a fair trial. *State v. White*, 5 Haw. App. 670, 706 P.2d 1331 (1985). "[T]he right to adduce evidence in his behalf [is one] of the fundamentals inherent in the due process guarantee of a fair trial." *State v. Horn*, 58 Haw. 252, 255, 566 P.2d 1378, 1380 (1977). In this case, Acosta was denied the right to bring into evidence the full impact of the Pintoy confession. The State did not object to its introduction, only co–defendant Mabuti prevented the presentation of this evidence. Based on this piece of evidence alone, we feel that Acosta was denied a fair trial. In light of this conclusion, the denial of the motion to sever Acosta's trial from that of co–defendant Mabuti was an abuse of discretion.

## VII.

We see no abuse of discretion by the trial judge on any of Mabuti's points of error raised on appeal. Accordingly, we affirm Mabuti's conviction.

Based on our finding that Appellant Acosta was denied the right to a fair trial, we reverse his conviction. As to Acosta's additional issues raised on appeal, we find no reversible error.

Affirmed as to the conviction of Joefrey Mabuti.

Reversed on the conviction of Vicente Acosta and remanded for new trial.

*Collin K. C. Lau* for Appellant Joefrey Mabuti.

*Patricia A. Loo*, Deputy Prosecuting Attorney, for Plaintiff–Appellee in No. 14274.

*Joseph R. Mottl, III* for Appellant Vicente Acosta.

*Caroline M. Mee*, Deputy Prosecuting Attorney, for Plaintiff–Appellee in No. 14178.