**Electronically Filed
Supreme Court
SCWC-22-0000267
05-JUN-2024
08:33 AM
Dkt. 11 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

ZETH BROWDER,
Petitioner/Defendant-Appellant.

SCWC-22-0000267

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000267; CASE NO. 3CPC-19-0000486)

JUNE 5, 2024

McKENNA, EDDINS, AND DEVENS, JJ.;
AND GINOZA, J., DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY EDDINS, J.

**I.**

During closing argument in this sexual assault case, the prosecution told the jury that its decision "comes to one question. Is [complaining witness] believable?" Then, while

discussing the court's credibility instruction, the prosecution explained that the witness' testimony "is consistent with someone who's been traumatized."

Recently we vacated a conviction in a sexual assault case after the prosecution during closing argument told the jury that its decision "comes down to one question, is [complaining witness] believable?"  Then, while discussing the court's credibility instruction explained that the witness' testimony "is consistent with a child who is traumatized."  State v. Hirata, 152 Hawai'i 27, 29, 520 P.3d 225, 227 (2022).  This court held that the "traumatized" statement was prosecutorial misconduct that eroded the defendant's constitutional right to a fair trial.  Id. at 33, 520 P.3d at 231.

In the present case, the Intermediate Court of Appeals validated the prosecutor's remarks.  We do not.

The prosecuting attorney crossed the line in Hirata.  Here too.  The remarks constituted prosecutorial misconduct.

We hold that the prosecuting attorney expressed a personal belief about the witness' credibility and added new evidence during closing argument, thereby undermining the defendant's right to a fair trial.

**II.**

The State alleges that Zeth Browder sexually assaulted the complaining witness (CW) (an identifier commonly used in

2

Hawai'i's trial courts), an elderly woman, while she was camping in her tent in a county park.

The State charged Browder by indictment. It alleged he committed first degree sexual assault, Hawai'i Revised Statutes (HRS) § 707-730(1)(a) (2014), third degree sexual assault, HRS § 707-732(1)(f) (2014), first degree burglary, HRS § 708-810(1)(c) (2014), kidnapping, HRS § 707-720(1)(e) (2014), and evidence tampering, HRS § 710-1076(1)(a) (2014).

Third Circuit Court Judge Robert Kim presided over Browder's trial. The trial occurred two years after Chanse Hirata's continuous sexual assault of a minor trial, and one year before this court's Hirata opinion.

The same deputy prosecuting attorney tried both cases.

The jury found Browder guilty of all charges.

Browder appealed. He raised multiple points of error.

The ICA vacated Browder's conviction and ordered a new trial based on other comments the prosecutor made during closing argument. The State didn't appeal the ICA's decision on those comments. Nor did it appeal the ICA's conclusion that those comments may have affected the trial's outcome and therefore Browder should be retried.

The ICA rendered a split decision on the prosecutor's "consistent with someone who's been traumatized" comment. The majority held that the statement was not misconduct. Judge

3

Leonard disagreed, saying the remark mirrored the one this court found improper in Hirata.  Browder appealed on this issue.  We accepted cert to examine the ICA majority's view that the prosecutor's "traumatized" comment was permissible.

Thus, the only issue before us is whether the prosecutor's "consistent with someone who's been traumatized" comment was prosecutorial misconduct.  So we limit our recitation of the facts.

Browder's case went to trial in late 2021.  The State called several witnesses who interacted with the woman after the alleged crime: the first person she reported the assault to, two responding police officers, two detectives, and a nurse who performed a sexual assault examination.  Each witness described the woman as distressed, using words like "scared," "crying," "very emotional," and "shooken up" to describe her demeanor.

The CW testified.  The defense's cross-examination aimed to highlight purported inconsistencies in her prior statements.

Before the closing arguments, the court read the standard instruction about witness credibility.  See Hawai'i Standard Jury Instructions Criminal 3.09.

The prosecutor's closing referenced the credibility factors in the jury instruction.  She described the CW's testimony as "emotional," "crying," and "scared."  Then, like in Hirata, the

prosecutor declared that the CW's manner of testifying was "consistent with" a "traumatized" person.

The complaining witness in Browder's case is an elderly woman.  In <u>Hirata</u>, the complaining witness was a child.  That difference is inconsequential.

Browder's case and <u>Hirata</u> have four key similarities. First, the prosecution told the jurors that the case turned on credibility.  <u>Hirata</u>, 152 Hawai'i at 29, 520 P.3d at 227. Second, witnesses testified that the child and elderly woman were highly emotional during post-assault interactions.  Third, the child and elderly woman testified in highly emotional ways. <u>Id.</u>  Fourth, the prosecutor's closing arguments described the complaining witness' testimony as "consistent with" a traumatized person.

Here is what the prosecutor said in both cases:

| <u>Hirata</u>, 152 Hawai'i at 29, 520 P.3d at 227: | This case (emphasis added): |
|---|---|
| . . . . <u>And it also comes down to one question, is [CW] believable?</u><br><br>Now, the Court gave you the jury instructions that you all have in front of you, and on page 8, there are a list of factors that you can consider when you deliberate to determine if a witness is credible. So you look at their demeanor, their candor, lack of motive, and if what they say makes sense.<br><br>So when you look at the factors – and I'll go through them with you, ladies and gentlemen – the answer is clear to this question.  Yes, [CW] is believable.  And because [CW] is | . . . . [U]ltimately <u>this case comes to one question.  Is [CW] believable?</u><br><br>Now, [the Circuit Court] just read you a number of jury instructions, and on page 9 you'll find a number of credibility factors that you can use to determine the credibility of witnesses.<br><br>I'm not gonna reread everything again for you, but when you look at some of them like her demeanor, her candor, her lack of motive and is [sic] what she says makes sense, then the State submits that, yes, the answer to this question is that [CW] is believable. And because [CW] is believable as |

| | |
|---|---|
| believable, it's – it is the testimony that has a convincing force upon you that counts, and the testimony of even a single witness, if believed, can be sufficient to prove a fact.<br><br>So let's go through the factors of [CW]'s credibility.  Her appearance, demeanor, her manner of testifying.  She came here last week.  You saw her.  She's 11 years old.  She was nervous and understandably so.  And she tried to be brave up there on the stand.  She answered all of my questions.  She answered all of the defense attorney's questions.  Almost three hours up there.<br><br>And then at the end of almost those three hours, she couldn't be brave anymore, and you saw her when she got emotional.  She broke when the defense attorney continued to call – to question her credibility and if she was making this up, and her answer to you was this really happened.  <u>It's consistent with a child who is traumatized.</u> | stated on page 11 of your jury instructions, the testimony of even a single witness if believed is sufficient to prove a fact.<br><br>So now let's look a little bit closer at the credibility factors and the evidence that you heard over the last week.<br><br>So looking at [CW]'s appearance, demeanor, manner of testifying you saw her and you got to meet her over the course of two days of questioning.<br><br>She's 80 years old.  She was nervous, shaking on the witness stand.  She was emotional and crying.  She was scared.  She told you she was scared that morning.  She was scared at the hospital.  She was scared even a week and a half later, and she was still scared in court.  <u>This is consistent with someone who's been traumatized.</u> |

The ICA's majority (and the dissent) believe the summations meaningfully differ, making the appellate outcomes differ.  We held in <u>Hirata</u> that the "consistent with a child who is traumatized" remark improperly expressed the prosecutor's personal belief and improperly introduced new evidence during closing argument.  <u>Hirata</u>, 152 Hawai'i at 33, 520 P.3d at 231. The ICA views Browder's case as different.  It said, "the prosecutor's argument. . . was not based on the prosecutor's own evaluation and opinion of CW's reaction to being cross-examined, as in <u>Hirata</u>, but was supported by reference to the evidence or facts supporting the assertion" (cleaned up).

6

The ICA felt the prosecutor did not express a personal opinion related to the witness' credibility. Rather, telling the jury that the complainant testified consistent-with-a-traumatized-person was just an evidence-rooted inference. The ICA referenced several witnesses who described the woman as "crying," "scared," "sad," and "very shaky." In the ICA majority's view, that evidence of post-assault emotion flips the outcome.

Judge Leonard doesn't see the difference. Like we do here, her concurrence split-screens passages from the closing arguments, placing the closings side-by-side. She reasoned that Hirata "is indistinguishable from this case with respect to the prosecutor's statement to the jury that the complaining witness's . . . appearance, demeanor, and manner of testifying was consistent with someone who's been traumatized." To Judge Leonard, "[t]he rule of law applied to the prosecutor in Hirata is equally applicable to her in this case."

It is. We hold that the prosecuting attorney's consistent-with-someone-who's-been-traumatized remark expressed a personal belief about the credibility of the State's key witness and undermined Browder's right to a fair trial. The remark *also* resulted in a constitutionally unfair trial because prosecutors "are also forbidden from introducing new information or evidence

7

in closing argument."  Hirata, 152 Hawai'i at 33, 520 P.3d at 231.

**III.**

**A.    State v. Hirata**

Hirata held that a near-identical "consistent with someone who's been traumatized" remark was prosecutorial misconduct. 152 Hawai'i at 33, 520 P.3d at 231.  Hirata gave two independent reasons.

First, a prosecuting attorney's personal views about the evidence are out-of-bounds.  "[T]his court has often directed prosecutors to not express personal beliefs about the evidence." Id.  See also State v. Salavea, 147 Hawai'i 564, 582, 465 P.3d 1011, 1029 (2020) (prosecutors must "refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses").  A prosecutor's assertions of personal knowledge "are apt to carry much weight against the accused when they should properly carry none."  State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996).

Second, prosecutors "are *also* forbidden from introducing new information or evidence in closing argument."  Hirata, 152 Hawai'i at 33, 520 P.3d at 231 (emphasis added); see also State v. Basham, 132 Hawai'i 97, 113, 319 P.3d 1105, 1121 (2014)

8

("Closing arguments are not the place to introduce new evidence outside the safeguards of the Hawai'i Rules of Evidence.").

Hirata drew on this court's decisions in Salavea and Basham, which in turn relied on the American Bar Association (ABA) Standards for Criminal Justice. Salavea, 147 Hawai'i at 582 n.23, 465 P.3d at 1029 n.23; Basham, 132 Hawai'i at 114-15, 319 P.3d at 1122-23. The ABA Standards state that arguing from personal belief and adding new evidence are separate reasons to find misconduct. "The prosecutor should not argue in terms of counsel's personal opinion, *and* should not imply special or secret knowledge of the truth or of witness credibility." ABA Standard 3-6.8(b) (emphasis added). When prosecutors imply secret knowledge, they imply extra facts not in evidence.

Hirata held that a prosecutor's remark is improper if it expresses a personal belief about a witness' credibility *or* introduces new evidence, not just when it expresses a personal belief about credibility *and* introduces new evidence. The prosecuting attorney in Hirata "improperly expressed her personal belief about CW's credibility *and* injected new evidence." Hirata, 152 Hawai'i at 33, 520 P.3d at 231 (emphasis added). Both reasons were independent grounds to find prosecutorial misconduct. Contrary to the dissent and ICA, a prosecutor's improper personal belief is not cured because it was supported by evidence. See id. at 35, 520 P.3d at 233 ("[A]

9

statement may improperly imply a personal opinion even if specific facts or evidence are invoked.") (cleaned up).

Witness observations about an alleged victim's emotional state do not justify a prosecutor's suggestion to the jury that the victim testified truthfully because she was "traumatized." They did not in Hirata. And they do not here. The Hirata jury heard from the CW, the person who the CW first disclosed the sexual abuse to (the child's mother), a police officer, a detective, a doctor, and an expert on the dynamics of child sexual abuse. Hirata, 152 Hawai'i at 29, 520 P.3d at 227. The witnesses described the child in post-assault interactions as "scared" and "crying." That evidence was available to the jury in Hirata. Still Hirata concluded that the prosecutor's comment was misconduct.

**B.   Browder's Case**

Hirata held that the "consistent with" a "traumatized" person remark was improper for both reasons – improper personal opinion and new evidence during closing. 152 Hawai'i at 33, 520 P.3d at 231.

There's no difference in Browder's case. Hirata controls.

In both cases, the jury listened as the DPA claimed that the alleged victim testified "consistent with someone who's been traumatized." But, as in Hirata, the jury heard no *evidence*

that could legitimately support the prosecutor's claim that the CW testified consistent with a *traumatized* person.  Id.

Like Hirata, there was no evidence about post-assault "trauma" or evidence regarding the condition or state of being "traumatized."  Id.  There was extensive evidence about the witness' demeanor, her distraught emotional state.  But there was nothing to establish "trauma" as a concept or to diagnose the witness with being traumatized.  Nor was there foundation for the idea that the CW remained "traumatized" when she testified two and a half years after the alleged sexual assault. There was also no evidence about how a traumatized person may or may not testify or act while testifying.  See id. at 33 n.14, 520 P.3d at 231 n.14.

Hirata had an expert who testified generally about the dynamics of child sexual abuse, but did not opine specifically on how traumatized children testify in court or on that case's individual child.  Id.  The Hirata jury could apply the expert's general testimony to the evidence it heard.

Here, there was less for the jury to consider, because there was no expert.  This jury lacked any expert psychological testimony to go on.  This jury could only rely on its own preexisting ideas of what "trauma" is and what effects, psychological or otherwise, it has on someone who has been

11

"traumatized."  Thus, the prosecutor's comment had *less* support in this case than it did in Hirata.

"Trauma," and the state of being "traumatized," are loaded terms.  They mean more than distraught or upset.  They mean more than a person showing emotional distress, such as by crying or shaking.  They connote a lasting psychological condition.

The State, in its briefing to the ICA in this case, defined trauma as "*Psychiatry*.  A startling experience which has a lasting effect on mental life; a shock."  *Trauma*, The Random House Dictionary of the English Language, 1507 (The Unabridged Edition 1973).  The State also defined trauma as "*Psychiatry*.  A painful emotional experience, or shock, often producing a lasting psychic effect."  *Trauma*, Webster's New World Dictionary, 1423 (Third College Edition, 1988).  More modern dictionaries define it as "a disordered psychic or behavioral state resulting from severe mental or emotional stress or physical injury."  *Trauma*, Merriam Webster Dictionary. https://www.merriam-webster.com/dictionary/trauma [https://perma.cc/DQH6-EG59].  Or, "[s]evere emotional or mental distress caused by an experience."  *Trauma*, The American Heritage Dictionary of the English Language, 2022. https://www.ahdictionary.com/word/search.html?q=trauma [https://perma.cc/P9S3-PZ3Q].

"Trauma," and the state of being "traumatized," have a specialized psychological meaning.  The Diagnostic and Statistical Manual of Mental Disorders (DSM-5), describes several kinds of traumatic psychological conditions, which can present with varying symptoms.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 265-290 (5th ed. 2013).  For example, post-traumatic stress disorder, which can result in long-term effects after exposure to sexual violence.  Id. at 271-80.

"Trauma" or "traumatized" doesn't always mean exactly one thing.  Id.  In some cases, survivors of sexual violence behave with an unemotional, calm demeanor.  See People v. Taylor, 552 N.E.2d 131, 133-34 (N.Y. 1990) (citing Ann Burgess & Lynda Holmstrom, Rape Trauma Syndrome, 131 Am. J. Psychiatry 981, 982 (1974)).  Emotionless self-presentation may also be "consistent with someone who's been traumatized."  See Taylor, 552 N.E.2d at 134 ("It is also apparent that there is no single typical profile of a rape victim and that different victims express themselves and come to terms with the experience of rape in different ways.").

The phrasing of the prosecutor's comment contributes to its impropriety.  "Consistent with" sounds like expert-speak.  In this case, the State's medical expert, Nurse Davis, opined that the CW's description of the assault was "consistent with" the

13

results of Davis' medical examination. "Consistent with" prompts a jury to think of "traumatized" in technical, medical, and diagnostic terms. Not the supposedly common-sense meaning the dissent claims.

"Consistent with" also suggests facts not in evidence. For a witness' behavior to be "consistent with someone who's been traumatized," some behaviors must be consistent with trauma. Trauma also must have some relevance. In short, "trauma," and being "traumatized," must mean something. The prosecutor's comment invites the jury to supply its own meaning outside of properly admitted evidence.

For sure, a prosecutor during closing argument "is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence." Clark, 83 Hawai'i at 304, 926 P.2d at 209. Free-flowing syntax often adds flair to a closing argument. But here, the consistent-with-a-traumatized-person comment was not improvised or extemporaneous. Rather, it was deliberate. As in Hirata, the remarks boosted the CW's credibility.

Examining the persuasive impact of "consistent with someone who's been traumatized" shows why it is out of bounds. It invokes, for a juror familiar with trauma, that trauma may cause lapses in memory. See, e.g., Arthur H. Garrison, Rape Trauma Syndrome: A Review of a Behavioral Science Theory and its

Admissibility in Criminal Trials, 23 Am. J. Trial Advoc. 591, 619 (2000) (summarizing academic studies).  A knowledgeable juror may discount any gaps or inconsistencies they perceive in the CW's testimony.

A juror without that background may view the testimony differently.  See Taylor, 552 N.E.2d at 136 ("[W]e believe that patterns of response among rape victims are not within the ordinary understanding of the lay juror.").  Without an expert to explain the impacts, signs, and symptoms of trauma and to opine on whether the CW exhibits trauma, each juror may interpret the prosecutor's remark differently based on their individual experience.  See id. ("[C]ultural myths still affect common understanding of rape and rape victims.").

Because an ordinary juror may hold myths or misconceptions about the trauma-infused testimony of sexual assault survivors, State v. David is inapposite.  That case held that requiring expert testimony to introduce evidence about (1) blood alcohol concentration's connection to alcohol consumption and (2) the association between alcohol consumption and aggressive behavior undercut the defendant's right to present a defense.  State v. David, 149 Hawai'i 469, 477, 481, 494 P.3d 1202, 1210, 1214 (2021).  BAC and the relationship between alcohol and aggression are within the common knowledge of the average adult.  Id. Thus, this court concluded that jurors should apply "their

general knowledge of how humans operate in the world." Id. at 478, 494 P.3d at 1211.

David is different. Ordinary adults understand the effects of alcohol. Many – we suspect most - adults don't have experience listening to a rape survivor recount their experience. An adult's common knowledge does not include how sexual assault survivors testify in a public courtroom. That experience is more specific than the average adult's "general knowledge of how humans operate in the world." Id.

The dissent's fundamental premise is that an adult sexual assault survivor's manner of testifying is within the average adult's common understanding. We don't share that view.

The dissent also seeks to separate this case from Hirata because the prosecutor's traumatized comment was "thoroughly supported by evidence" and because the defense attacked CW's credibility. This is no distinction at all. The prosecutor and defense attorney in Hirata did the same things.

After the "traumatized" comment, the Hirata prosecutor described evidence from other witnesses about the CW's post-assault emotional state: "She was upset, emotional;" "[s]he was nervous. She was quiet, withdrawn;" "[s]he broke down. She was crying, and she was weeping." The prosecutor also described evidence about CW's physical injuries.

16

The dissent canvasses the transcript here and concludes that the prosecutor's discussion of the evidence justified her "traumatized" comment. It quotes Salavea: "A statement about a witness's credibility that is made without reference to the evidence or facts supporting the assertion amounts to an expression of personal opinion." 147 Hawai'i at 582, 465 P.3d at 1029. But Salavea's statement doesn't mean that if a prosecutor assembles some evidence, then any personal opinion is allowed. Closing arguments frame facts. In almost any trial where a prosecutor makes a prejudicial remark, the comment will be tethered to the facts in some way.

Here, we decline to greenlight a prosecutor's prejudicial comment just because the prosecutor detailed facts about an adult's emotional state.

The dissent also concludes that because Browder's counsel attacked CW's credibility, the prosecutor's "traumatized comment was appropriate." In Hirata, defense counsel also questioned the CW's credibility: "[T]he first thing let's talk about is the reason. . . why [CW] said what she said. . . . [I]t's attention from her mom." The defense continued: "So caution, jurors, just because [CW] said it doesn't make it true." "[L]et's talk about some of the inconsistencies" in the CW's testimony.

In this case, defense counsel attacked the CW in stark terms, accusing her of "lying." We do not condone counsel's use

17

of the words "lie" and "lying."  See State v. Austin, 143 Hawai'i 18, 50–51, 422 P.3d 18, 50–51 (2018) (opinion of the Court by Pollack, J.) (recognizing many problems with a prosecutor's assertion that a witness was lying).  Still, we believe that the defense's objectionable word choices do not validate the prosecutor's improper argument.  And, the defense's credibility challenge does not separate this case from Hirata.

Challenging the credibility of prosecution witnesses is a routine feature of most criminal trials.  Not challenging the credibility of a witness may lead to claims that defense counsel's representation fell below an objective standard of reasonableness.  The right to cross-examination, and a closing argument that questions credibility, does not pave the way for prejudicial prosecutorial commentary.

Here, the "traumatized" comment also adds evidence that the assault occurred as the CW described it.  Evidence of the CW's emotional behavior, combined with the prosecutor's "traumatized" comment, suggests that the CW was in fact traumatized.  So, the CW must have experienced a traumatic event, a juror may think. Thus, the CW's psychological condition becomes more evidence supporting her description of the sexual assault.  And, it resembles prejudicial victim-impact evidence.  Hirata, 152 Hawai'i at 35, 520 P.3d at 233.

Contrary to the dissent's reading, we do not encourage a prosecution expert to discuss CW's "trauma" in every sexual assault case. Hirata expressed concern that, in many cases, evidence of CW's trauma may be impermissible victim-impact evidence. Id. at 33 n.13, 520 P.3d at 231 n.13.

The prosecutor's diagnostic and causal opinion about trauma may carry undue weight. A prosecutor's words have an outsized influence on a jury. Id. at 33, 520 P.3d at 231. The prosecutor's personal opinion, enhanced by their experience in sex-crimes cases, enters the jury's decision-making calculus. See Salavea, 147 Hawai'i at 582, 465 P.3d at 1029 (prosecutor's personal opinions "tend to exploit the influence of the prosecutor's office"); Clark, 83 Hawai'i at 304, 926 P.2d at 209 ("[I]mproper suggestions, insinuations, and especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."). Trust me, the prosecutor says, I know what a traumatized person looks and acts like.

But Hirata recognized that a prosecutor's consistent with a traumatized person comment requires evidentiary support. There, the prosecutor's "traumatized" comment lacked "evidence that could legitimately support" it because "[n]o witness testified about CW's mental health or psychological condition." Hirata, 152 Hawai'i at 33, 520 P.3d at 231.

19

This court has recognized that expert testimony on the dynamics of sexual abuse "may play a particularly useful role by disabusing the jury of some widely held misconceptions so that it may evaluate the evidence free of the constraints of popular myths." See State v. Batangan, 71 Haw. 552, 558, 799 P.2d 48, 52 (1990) (cleaned up). Expert testimony can assist the jury in applying technical psychological concepts. But injecting the concept of "trauma" and the diagnosis that a witness has been "traumatized" without supporting expert testimony asks the jury to draw on popular myths, not avoid them.

Prosecutors have "a duty to seek justice, to play fair and square." Hirata, 152 Hawai'i at 33, 520 P.3d at 231. Since statehood, this court has fiercely protected a criminal defendant's constitutional right to a fair trial. See State v. Yoshino, 50 Haw. 287, 290, 439 P.2d 666, 669 (1968). We do so again.

**IV.**

We vacate the part of the Intermediate Court of Appeals' memorandum opinion that allowed the prosecutor to say that the witness testified "consistent with someone who's been

20

traumatized."  The case is remanded to the Circuit Court of the Third Circuit.

| | |
|---|---|
| Walter J. Rodby<br>for petitioner | /s/ Sabrina S. McKenna<br><br>/s/ Todd W. Eddins |
| Stephen K. Tsushima<br>for respondent | /s/ Vladimir P. Devens |

